### In re Kelly CHOO, Debtor.

### Jeffrey I. Golden, Chapter 11 Trustee, Appellant,

### v.

### Chicago Title Insurance Company, Appellee.

**BAP No. CC–01–1349–BMaMo.**
**Bankruptcy No. LA 99–48486–ER.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Dec. 14, 2001.

Filed Feb. 8, 2002.

---

Helen Ryan Frazer, Atkinson, Andelson, Loya, Ruud & Romo, Cerritos, CA, for Jeffrey Golden, Ch. 11 Trustee.

Mark J. Rosenbaum, Wolf, Rifkin & Shapiro LLP, Los Angeles, CA, for Chicago Title Insurance Company.

Before BRANDT, MARLAR, and MONTALI, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

The chapter 11 trustee appeals the bankruptcy court's denial of his motion to surcharge a secured claimant's collateral under section 506(c),[1] arguing the court erred in its finding that the services and costs of the trustee and his counsel conferred no benefit to the secured claimant. We AFFIRM.

## I. FACTS

In February 1997 American Savings Bank F.A. obtained a $139,009 joint and several judgment in the Los Angeles Superior Court against Debtor Kelly Choo and his nondebtor spouse. American Savings assigned the judgment to Appellee Chicago Title Insurance Company, which obtained and recorded an abstract of judgment in Los Angeles County. Then, in May of 1999, Chicago Title obtains notices of levy and writs of execution against ten parcels of real estate in Los Angeles County.

Chicago Title then applied for an order for sale; the application was granted, and a show cause hearing scheduled. Before the execution sale, the debtor filed his voluntary chapter 11 petition in October of 1999, scheduling the parcels as assets. In December of 1999 the bankruptcy court appointed Appellant Jeffrey Golden trustee.

After a senior creditor obtained relief from the automatic stay as to five of the parcels, the trustee sold the remaining five free and clear of encumbrances, over Chicago Title's objection, and pursuant to or-

ders of the court, receiving net proceeds of $185,631.18.

On 31 May 2001 the trustee filed the surcharge motion here at issue, asking for fees ($3,443), costs ($141.41), and attorney's fees ($16,282.50) and costs ($2,653.78) he asserts he incurred in preserving and selling the five parcels. Chicago Title opposed, and the bankruptcy court, finding the trustee had failed to demonstrate any legally sufficient benefit to Chicago Title, denied the motion on 25 June 2001. This appeal followed.

Meanwhile, the trustee had filed an adversary complaint under section 544(b) to determine the validity of Chicago Title's claimed lien; Chicago Title counterclaimed for turnover of the sales proceeds. On 26 July 2001 the court granted Chicago Title summary judgment on its counterclaim for $198,429.97 (principal of $139,009.18 and pre-judgment interest of $59,420.79); the trustee did not appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1) and (b)(2)(A) and (O), and we do under 28 U.S.C. § 158(c).

## III. ISSUE

Whether the trustee's fees, and attorney's fees and costs he incurred in selling the properties, provided a benefit to Chicago Title surchargeable under section 506(c).

## IV. STANDARDS OF REVIEW

■ The issue of whether expenses were reasonable, necessary, and benefitted the secured creditor is a question of fact

---

1. Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "FRCP" references are to the Federal Rules of Civil Procedure.

which we review for clear error. *Bank of Honolulu v. Anderson (In re Anderson)*, 66 B.R. 97, 99 (9th Cir. BAP 1986).

■ A bankruptcy court's interpretation of the Bankruptcy Code and Rules is a matter of law which we review de novo. *Predovich v. Staffer (In re Staffer)*, 262 B.R. 80, 82 (9th Cir. BAP 2001).

## V. DISCUSSION

■ Generally, bankruptcy administrative expenses may not be charged to or against secured collateral. *Calstar Corp. v. Debbie Reynolds Hotel and Casino, Inc. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 238 B.R. 831, 836 (9th Cir. BAP 1999), *rev'd on other grounds*, 255 F.3d 1061 (9th Cir.2001), (citing *Central Bank of Mont. v. Cascade Hydraulics and Util. Serv., Inc. (In re Cascade Hydraulics and Util. Serv., Inc.)*, 815 F.2d 546, 548 (9th Cir.1987)). Section 506(c)[2] codifies a common law exception to this rule where a trustee demonstrates "that the incurred expenses were (1) reasonable, (2) necessary, and (3) beneficial to a secured creditor." *Debbie Reynolds*, 238 B.R. at 837 (citing *Cascade Hydraulics*, 815 F.2d at 548).

The bankruptcy court grounded its denial of the surcharge motion on its finding "that the services and costs of the Trustee and his counsel did not provide a quantifiable benefit."

The trustee argued in his motion that Chicago Title benefitted from sale of the properties in that "it did not itself have to incur any costs associated with the sale of said real properties, and at the time of the said sale, [Chicago Title's] secured interest was in dispute." He also asserted his and

his counsel's efforts spared Chicago Title from having to move for relief from stay and from the expenses of foreclosure, sale and interim property management. Finally, he alleged that several of the properties generated rents insufficient to allow him to make adequate protection payments, and that by negotiating with the senior lien holders, the trustee and his counsel were able to delay relief from stay (and default) proceedings long enough to market the properties in which the senior lien holders were oversecured. The trustee argues that, absent such negotiations, the senior lien holders might have foreclosed and wiped out Chicago Title's interest if Chicago Title did not make up the arrearages on senior encumbrances and sell the properties itself. His proof consisted entirely of sale details and documentation (closing statements) and his own time and costs (including time and expense records of his counsel).

■ Chicago Title argues that the proposed expenses were not incurred primarily for its benefit, but were for the benefit of other creditors. But "[t]he Code does not require that [the trustee] have the best interests of the secured creditors in mind ...." *North County Jeep and Renault, Inc. v. Gen. Elec. Capital Corp. (In re Palomar Truck Corp.)*, 951 F.2d 229, 232 (9th Cir.1991), *overruled on other grounds, Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). Rather, the focus is on whether the expenditure in question was directed specifically toward the collateral, as opposed to property of the estate generally. In the latter case any benefit to the secured creditor would be incidental, not

2. Section 506(c) provides:
The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of

preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

compensable. Avoidance of the foreclosure and disposition costs may be a direct benefit.

■ To satisfy the "benefit" prong, the claimant must "establish in quantifiable terms that it expended funds directly to protect and preserve the collateral." *Cascade Hydraulics*, 815 F.2d at 548 (citations omitted). "A debtor does not satisfy her burden of proof by suggesting hypothetical benefits." *Id.* (citation omitted). Here, Chicago Title argued that the sale of the property conferred no benefit on it. Pointing to declarations of its officers supporting its opposition, Chicago Title argued that it had taken all steps necessary to foreclose prepetition, that interest had increased its claim by about $17,000, and that it had incurred attorney's fees and costs exceeding $28,000, not including those incurred in opposing the motion, and that it could have internalized many of the expenses.

Relying on *Compton Impressions Ltd. v. Queen City Bank, N.A. (In re Compton Impressions, Ltd.)*, 217 F.3d 1256 (9th Cir. 2000), the bankruptcy court determined that the benefits that the trustee outlined "tend to be of the hypothetical grouping that *Compton* really advises the Court not to base the [506](c) recovery on. So, the lack ... of quantification of the benefits to the respondent ... leads the Court to rule [for Chicago Title]."

In *Compton Impressions*, the Ninth Circuit determined that, since the secured creditors could have foreclosed on their collateral at the outset of the case and fully recovered the $1.7 million unpaid balance of their loans (leaving behind about a $2 million equity cushion), the bankruptcy court did not clearly err in finding that the debtor had failed to meet its burden of establishing that the secured creditors quantifiably benefitted from the services of its professionals (except to the extent of part of the debtor's attorney's fees, 217 F.3d at 1261, the basis for which is unclear in the opinion). This was true despite a "hypothetical" benefit inuring to the secured creditors in the form of the return of their postpetition advances and a return of 96% of the principal balance of their loan, all for substantially less than they would have been able to realize had they disposed of the collateral themselves at the time when the debtor did. *Id.*

■ Applying *Compton Impressions* to the facts here, relief from stay to execute on the parcels was not an option for Chicago Title, because the parties were litigating the validity of its judgment lien in the adversary proceeding. But *Compton Impressions* requires that "[w]e measure the necessity and reasonableness of the Debtor's [here, the trustee's] incurred expenses against the benefits obtained for the secured creditor and the amount that the secured creditor would have necessarily incurred through foreclosure and disposal of the property." *Id.* at 1260 (citation omitted).

In a case predating *Compton Impressions* by over a decade, but which remains good law, Judge Bufford concisely set forth the analysis:

The benefit test establishes a ceiling on the recovery of the trustee: The trustee may recover only to the extent of the benefit conferred on American. The actual surcharge is further limited to those expenses that were reasonable and necessary to obtain this benefit.

. . . .

While the benefit imposes a ceiling on the trustee's recovery, it does not impose a floor: To the extent that the secured creditor is permitted to keep part of the benefit, this is a windfall to the creditor.

. . . .

Where the improvement of property confers a direct quantifiable benefit on a secured creditor, the Court holds that the trustee may recover the costs and expenses of the improvement, subject to the ceiling of the value conferred.

*Am. Sav. and Loan Ass'n v. Gill (In re North County Place, Ltd.)*, 92 B.R. 437, 445 (Bankr.C.D.Cal.1988)

■ In the present context, Chicago Title benefitted, if at all, by avoiding costs of sale and disposition, rather than from improvement of the property. But, as noted, the trustee did not even attempt to prove up what it would cost Chicago Title to restart the sheriff's sales and dispose of the properties, or the likelihood of it as executing creditor becoming the purchaser and thus having further disposal costs. These are factual issues put at issue by Chicago Title's opposition to the surcharge motion, and are susceptible to resolution by the court after discovery and presentation of expert testimony or other evidence, or by stipulation. Without proof, the benefit to Chicago Title remains, in *Compton Impressions* terms, "hypothetical."

Chicago Title's proof is that it would have cost a maximum of $4000 to complete the foreclosures pending on the petition date, which the sales free and clear obviated. Arguably, the trustee's actions benefitted Chicago Title in that amount. We decline so to hold, as the trustee neither made this argument in the bankruptcy court, nor in his opening brief. *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990) (issues not raised at the trial court will not be considered for the first time on appeal); *Concrete Equip. Co., Inc. v. Fox (In re Vigil Bros. Constr., Inc.)*, 193 B.R. 513, 520 (9th Cir. BAP 1996). *Law Offices of Neil Vincent Wake v. Sedona Inst. (In re Sedona Inst.)*, 220 B.R. 74, 76 (9th Cir. BAP 1998) (arguments not specifically and distinctly made in an appellant's opening brief are waived and will not ordinarily be considered), *aff'd*, 21 Fed.Appx. 723, 2001 WL 1345985 (9th Cir.2001) (unpublished table decision). Without testing by either the adversary process in the bankruptcy court or the advocacy of the parties in their briefs, we are unable to say whether the completion costs approximate the costs of restarting two years later.

Having reached this conclusion, we need not address whether a trustee's statutory compensation may be recovered under section 506(c), *see, e.g.*, David Gray Carlson, *Secured Creditors and Expenses of Bankruptcy Administration*, 70 N.C. L.Rev. 417, 467 n. 201 (1992) (stating that "[a]mong expenses not allowed under § 506(c) is the value of the trustee's own labor"), or whether the creditor's accruing interest and litigation costs during the pendency of the litigation over its lien's validity is available as an offset.

We differ slightly from the bankruptcy court: the benefit the trustee provided to Chicago Title, while quantifiable, was not quantified. The trustee simply did not prove the first element of his case: benefit to the secured creditor.

## VI. CONCLUSION

On the apparent and mistaken premise that Chicago Title's benefit equaled his costs, the trustee failed to establish any benefit, and his motion to surcharge fails. We AFFIRM.