FILED

JAN 12 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-11-1221-MkHPa |
| BRIAN W. DAVIES, | Bk. No.   6:10-bk-37900-SC |
| Debtor. | Adv. No.   6:11-ap-01001-SC |
| BRIAN W. DAVIES, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee of the Residential Asset Securitization Trust 2007-A5 Mortgage Pass Through Series 2007-E, Under the Pooling and Servicing Agreement Dated March 1, 2007, Its Assigns and/or Successors In Interest, | |
| Appellee. | |

Argued and Submitted on
November 16, 2011, at Pasadena, California

Filed - January 12, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Scott C. Clarkson, Bankruptcy Judge, Presiding[**]

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**]This case was reassigned from the Honorable Thomas B. Donovan to the Honorable Scott C. Clarkson on February 2, 2011.

1

Appearances:     The Appellant argued pro se.  Sarina Saluja of Allen, Matkins, Leck, Gamble, Mallory & Natsis LLP argued on behalf of Appellee Deutsche Bank National Trust Company.

Before:  MARKELL, HOLLOWELL, and PAPPAS, Bankruptcy Judges.

**INTRODUCTION**

This appeal arises from an adversary proceeding in Brian W. Davies' ("Davies") Chapter 7[1] bankruptcy case.  The bankruptcy court granted Deutsche Bank National Trust Company's ("Deutsche") motion for judgment on the pleadings and denied Davies' motion for judgment on the pleadings or alternatively for summary adjudication and judgment.  For the reasons set forth below, we AFFIRM.

**FACTS**

On November 16, 2006, Davies executed a promissory note (the "Note") in favor of Universal American Mortgage Company of California ("Universal Mortgage").  To secure his payment obligations under the Note, Davies executed a deed of trust (the "Deed of Trust") against real property located in Indio, California (the "Property").  The Deed of Trust named Universal Mortgage as lender and trustee,[2] and Mortgage Electronic

---

[1]Unless specified otherwise, all "Chapter" and "Section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, all "Civil Rule" references are to the Federal Rules of Civil Procedure, 1-86, and all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101-1103.

[2]NDEx West, LLC ("NDEx")succeeded Universal Mortgage as
(continued...)

2

Registration Systems, Inc. ("MERS") as beneficiary, acting solely as nominee for lender and lender's successors and assigns.

On August 31, 2010, Davies filed a Chapter 7 bankruptcy petition.

**1.    The Relief from Stay Proceedings**

**a.    The First Lift Stay Motion**

OneWest Bank, FSB ("OneWest") moved for relief from stay, under Sections 362(d)(1) and 362(d)(2), as to the Property on September 23, 2010 (the "First Lift Stay Motion").

In support of its motion, OneWest attached the declaration of Brian Burnett, an employee of OneWest and "one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property" (the "Burnett Declaration"). The Burnett Declaration listed outstanding principal at $441,349.36; accrued interest at $53,222.85; late charges at $1,673.42; attorney's fees and other costs at $700.00; and advances (including property taxes and insurance) at $17,141.96, for a total claim of $514,087.59. According to Burnett, since the time of the last payment received, November 1, 2008, twenty-one prepetition payments (totaling $50,203.44) and one postpetition payment (totaling $2,390.64) had become due but remained unpaid.[3]

---

[2](...continued) trustee on October 16, 2009. A "Notice of Default and Election to Sell under Deed of Trust" was recorded on July 14, 2009. A "Notice of Trustee's Sale," with a sale set for September 1, 2010, was recorded on August 9, 2010.

[3]Davies later testified in subsequent proceedings that he (continued...)

3

In further support of its motion, OneWest attached a copy of the Deed of Trust and a copy of the Note.[4] OneWest also included a copy of an assignment of the Deed of Trust. The assignment, dated September 20, 2010, and signed by Brian Burnett on behalf of MERS, assigned the beneficial interest in the Deed of Trust to Deutsche, as Trustee of the Residential Asset Securitization Trust 2007-A5, Mortgage Pass-Through Certificates, Series 2007-E, under the Pooling and Servicing Agreement dated March 1, 2007 (the "2010 Assignment").[5] In addition, OneWest attached a copy of Davies' schedule D to its motion, which listed Universal Mortgage as a secured creditor.[6]

---

[3](...continued)
made one payment to OneWest in April 2009 and that he made a subsequent payment, which OneWest returned to him. According to him, this was the last time he ever tendered a payment to any entity with respect to the Property. Davies also testified that he had not placed any amounts related to unpaid mortgage payments in a segregated account.

[4]The Note was endorsed three times. The first endorsement, by Universal Mortgage to Opteum Financial Services, LLC ("Opteum Financial") appears on a separate page not part of the original Note. The second endorsement, by Opteum Financial to IndyMac Bank, F.S.B. ("IndyMac") appears on the last page of the original Note. The third endorsement is an endorsement in blank by IndyMac; it too appears on the last page of the original Note.

[5]The assignment proffered by OneWest was dated September 20, 2010 (the "2010 Assignment"), after the August 31, 2010 commencement of Davies' bankruptcy case. Another version of the assignment, included as an exhibit to Davies' objection, is dated August 10, 2009, and was recorded on August 20, 2009 (the "2009 Assignment"). This discrepancy remains without explanation.

[6]Davies subsequently amended his bankruptcy schedules. The most recent amended version of schedule D did not include Universal Mortgage as a secured creditor. Instead, Universal Mortgage appeared on Davies' second amended schedule F, as an
(continued...)

4

Davies objected to the First Lift Stay Motion on October 6, 2010, challenging OneWest's standing to move for relief from stay.

### b.    The Amended Lift Stay Motion

On October 19, 2010, OneWest filed an amended motion for relief from stay (the "Amended Lift Stay Motion").  The first page of the accompanying "Notice of Motion" named "OneWest, as servicing agent for Deutsche Bank," and not simply "OneWest" as the movant.  All other pages of the Amended Lift Stay Motion simply identified "OneWest" and not "OneWest, as servicing agent for Deutsche Bank" as the movant.  Attached to the Amended Lift Stay motion was the same Burnett Declaration that accompanied the First Lift Stay Motion.  Other than this declaration, OneWest attached no additional exhibits to this filing.

Davies filed an objection to the Amended Lift Stay Motion on November 5, 2010, again challenging OneWest's standing to move for relief from stay.

### c.    Denial of the Amended Lift Stay Motion

The bankruptcy court heard the Amended Lift Stay Motion on November 18, 2010 and denied the motion, without prejudice, on January 7, 2011.  In its order, the bankruptcy court determined that OneWest, and OneWest, as agent for Deutsche, did not have standing to move for relief from stay and that Burnett's Declaration lacked credibility, as he "signed [it] both as an employee of Movant and as an agent for MERS."  Bk. Dkt. No. 64.

---

[6](...continued)
unsecured nonpriority creditor with a disputed claim.

**2.    The Adversary Proceeding**

   **a.    The Complaint**

On January 2, 2011, Davies initiated an adversary proceeding (the "Adversary Proceeding")[7] against Deutsche and various other parties (collectively, the "Defendants").  The complaint (the "Complaint")[8] stated six causes of action and sought:

   (1)   declaratory relief as to the nature, extent, and validity of Deutsche's interest in the Property, specifically, that the Deed of Trust giving rise to Deutsche's interest in the Property was null and void and that the amount of Deutsche's claim was $0.00;[9]

   (2)   declaratory relief as to the status of Deutsche's claim, that is, that the Deed of Trust had no value, as being null and void, and that, the amount of Deutsche's "unsecured" claim was $0.00 (collectively, the

_____

[7]In connection with the Adversary Proceeding, the parties submitted several requests for judicial notice.  The bankruptcy court took judicial notice of all of the documents those requests identified.  Among these documents were copies of SEC filings (including the Pooling and Servicing Agreement) concerning the Residential Asset Securitization Trust ("RAST"), copies of the Note, Deed of Trust, the 2009 Assignment, and documents produced in response to subpoenas issued in the Adversary Proceeding.

[8]In the Complaint, Davies alleged that "[t]he 'Origination Funds' for the 'Note' came from another undisclosed source," that the "indebtedness to this 'Note' remain[ed] uncertain."  Compl. ¶ 24.

[9]As to this first declaratory relief claim, Davies alleged "that he holds an interest in the Property free and clear of any interest of defendants, in that the lien evidenced by the 'Deed of Trust' and its subsequent assignments has no value since it is wholly 'unsecured', and that accordingly, the 'Deed of Trust' is 'null and void.'"  Compl. ¶ 82.

6

Declaratory Relief Claims");[10]

    (3)    damages for an alleged violation of the noticing requirements set forth in Section 1641(g) of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f (the "TILA Claim");

    (4)    damages for fraud in conveyance allegedly arising from the transactions involving the Deed of Trust (the "Fraud Claim");

    (5)    damages for libel (the "Libel Claim"); and

    (6)    quiet title as to the Property (the "Quiet Title Claim").[11]

Adv. Dkt. No. 1.

**b.    The Bankruptcy Court Dismisses Davies' Claims Without Leave to Amend**

On April 5, 2011, Deutsche moved for judgment on the pleadings ("Deutsche's Motion for Judgment"), seeking dismissal of Davies' claims. Davies also moved for judgment on the pleadings, or alternatively, summary adjudication and judgment ("Davies' Motion for Judgment") on April 5, 2011.

In his motion, Davies argued that issue preclusion and judicial estoppel precluded Deutsche from relitigating the issue

---

[10]In connection with the second declaratory relief claim, Davies alleged that "the lien evidenced by the 'Deed of Trust' has no value since it is wholly unsecured" and that "the 'Deed of Trust' and its subsequent assignments are null and void." Compl. ¶ 88.

[11]With respect to his Quiet Title Claim, Davies alleged that Defendants "claim[ed] an interest adverse to Plaintiff in the above-described property." Compl. ¶ 116.

7

of standing, as to which the bankruptcy court ruled when it denied OneWest relief from stay. On that basis, Davies contended he was entitled to a declaration that Deutsche held no interest in the Property. Moreover, Davies maintained that if his claims for declaratory relief and fraud "[we]re held to be accurate and Judgment [wa]s in Plaintiff's favor this Claim [the Quiet Title Claim] would be deemed proven and Quiet Title would be the remedy." Davies' Mot. for J. at 13.

The bankruptcy court heard both motions on May 3, 2011.[12] On May 10, 2011, the bankruptcy court granted Deutsche's Motion for Judgment and denied Davies' Motion for Judgment.[13]

### i. The Declaratory Relief Claims

As to Davies' Declaratory Relief Claims, the bankruptcy court reasoned that "Plaintiff appear[ed] to predicate his declaratory relief claims on his allegation that MERS' Assignment of the Deed of Trust to Defendant was a 'legal nullity' and that Davies s[ought] a determination that the Deed of Trust is 'null

---

[12]Davies submitted an audio recording of the May 3, 2011 proceedings to this Panel. We decline to consider the contents of such audio recording, as it is not an official record of the proceeding, and in any event, is irrelevant to our analysis and resolution of this appeal.

[13]As for Davies' request for summary adjudication, the bankruptcy court determined that the filing did not comply with the Local Bankruptcy Rules for the Central District of California, specifically, Local Rules 7056-1(b) (requiring movant to serve and file his notice of motion and motion at least 42 days before the hearing date) and 7056-1(b)(2) (requiring movant to include a statement of uncontroverted facts and conclusions of law and proposed summary judgment). The bankruptcy court denied summary adjudication as to each claim on that basis.

8

and void.'" Memo. Op. re Deutsche's Mot. for J. at 7. On that basis, the bankruptcy court concluded that the Declaratory Relief Claims "address[ed] the same substantive concerns identified in the sixth claim for relief, the quiet title action." Id. at 7.

The bankruptcy court thus dismissed the Declaratory Relief Claims without leave to amend, also rejecting Davies' issue preclusion and judicial estoppel arguments, as the order denying OneWest relief from stay did "not contain any specific findings regarding Defendant Deutsche's standing and ownership interests . . . ." Id.

### ii.   The TILA Claim

The bankruptcy court next determined that Davies' TILA Claim was deficient based on his failure to allege that the claimed noncompliance with TILA's notice requirements caused him to incur actual damages. For that reason, the bankruptcy court dismissed the TILA claim. This dismissal originally included leave to amend. But at Davies' request that such leave be waived, the bankruptcy court denied leave to amend.

### iii. The Fraud Claim

The bankruptcy court concluded that Davies' Fraud Claim was "indecipherable on its face." Id. at 8. Because the bankruptcy court could not "make out any cognizable legal theory which the Plaintiff is asserting," it dismissed the Fraud Claim without leave to amend. Id. at 8.

### iv.   The Libel Claim

With respect to the Libel Claim, the bankruptcy court determined that Davies "ha[d] not alleged any specific statements made by Deutsche," that "[t]he only allegation [wa]s with respect

9

to 'conduct,'" and that Davies' "failure to identify and state the substance of the statements" rendered the claim insufficient. Id. at 8. On these grounds, the bankruptcy court dismissed Davies' Libel Claim without leave to amend.

### v. The Quiet Title Claim

As to Davies' last claim, the bankruptcy court determined that Davies did not allege "the date as of which determination is sought," include "in his prayer a request to quiet title against adverse claims," or "allege that he can tender the amount borrowed." Id. at 10. In addition, the bankruptcy court concluded that:

> The quiet title action merely attacks the foreclosure process and does not address a legitimate title dispute. If foreclosure is successful, title will change, and the quiet title claim is an improper means to challenge foreclosure. Nothing is available to . . . resurrect the . . . quiet title cause of action, which is subject to dismissal.

Id. at 10 (citing Lopez v. Chase Home Fin., LLC, No. CV F 09-0449 LJO GSA, 2009 U.S. Dist. LEXIS 35206 (E.D. Cal. Apr. 9, 2009)) (internal quotations omitted). For these reasons, the bankruptcy court dismissed the Quiet Title Claim without leave to amend.

### 3. The Appeal

On May 6, 2011, Davies timely appealed both the order granting Deutsche's Motion for Judgment and the order denying Davies' Motion for Judgment.[14]

---

[14]Though initially premature given that the bankruptcy court did not enter the relevant orders until May 10, 2011, Davies filed a timely notice of appeal. See Rule 8002(a).
After filing his appeal, Davies requested that this Panel take judicial notice of various documents. His first and second
(continued...)

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b).  We have jurisdiction under 28 U.S.C. § 158(c)(1).

**ISSUES**

1. Did the bankruptcy court err when it granted Deutsche's Motion for Judgment and denied Davies' Motion for Judgment?

2. Did the bankruptcy court err when it dismissed Davies' claims without leave to amend?

3. Did the bankruptcy court err when it determined that the doctrines of issue preclusion and judicial estoppel did not apply?

---

[14](...continued) requests, filed on June 3, 2011 and July 21, 2011, concerned documents filed in other bankruptcy cases.  In his third request, filed on October 4, 2011, Davies offered a newly-discovered argument based on a document entitled "Terra Lago Purchaser Grant Deed," a version of which was submitted as an exhibit in the Adversary Proceeding from which this appeal arose.

As an appellate court, we generally do not consider documents and arguments not presented in the first instance to the bankruptcy court.  See Kirschner v. Uniden Corp. of Am., 842 F.2d 1074, 1077-78 (9th Cir. 1988); Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002). Accordingly, we denied all three requests without prejudice to Davies renewing his motions based on evidence that the content of those requests were presented to the bankruptcy court in the proceedings leading up to the orders on appeal.  See Oct. 6, 2011 Order Denying Requests for Judicial Notice.

Since this case was argued, Davies has also filed a notice of supplemental authorities.  The cased cited, Vogan v. Wells Fargo Bank, N.A., No. 2:11-CV-02098-JAM-KJN (E.D. Cal. Nov. 17, 2011), is distinguishable on its facts and does not a play a role in our resolution of this appeal.  To the extent Davies wished us to take judicial notice of this unpublished decision, that request is DENIED.

11

**STANDARDS OF REVIEW**

We review the bankruptcy court's denial of a motion for judgment on the pleadings under Civil Rule 12(c) de novo. <u>See</u> <u>3550 Stevens Creek Ass'n v. Barclays Bank of Cal.</u>, 915 F.2d 1355, 1357 (9th Cir. 1990).

We review the bankruptcy court's denial of leave to amend for abuse of discretion. <u>See</u>, <u>e.g.</u>, <u>Alcazar v. Corp. of Catholic Archbishop of Seattle</u>, 598 F.3d 668, 671 n.3 (9th Cir. 2010), <u>vacated in part and aff'd in part</u>, 627 F.3d 1288 (9th Cir. 2010); <u>Reddy v. Litton Indus., Inc.</u>, 912 F.2d 291, 296 (9th Cir. 1990). The abuse of discretion test has two prongs: "first, whether the court applied the correct legal standard; and second, whether the factual findings supporting the legal analysis were clearly erroneous." <u>Veal v. Am. Home Mortg. Servicing (In re Veal)</u>, 450 B.R. 897, 915 (9th Cir. BAP 2011) (citing <u>United States v. Hinkson</u>, 585 F.3d 1247, 1261-63 (9th Cir. 2009) (en banc)).

Where a bankruptcy court has failed to apply the correct legal standard, "it has 'necessarily abuse[d] its discretion.'" <u>Id.</u> (citing <u>Hinkson</u>, 585 F.3d at 1261-63) (modifications in original). We review this first prong of the analysis de novo. <u>Id.</u> Where a bankruptcy court has applied the correct legal standard, "the inquiry then moves to whether the factual findings made were clearly erroneous." <u>Id.</u> (citing <u>Hinkson</u>, 585 F.3d at 1262). A bankruptcy court's findings are clearly erroneous if they are "'illogical, implausible, or without support in inferences that may be drawn from the record.'" <u>Id.</u> (citing <u>Hinkson</u>, 585 F.3d at 1263). <u>See also</u> <u>Rule 8013</u>.

Appellate courts should "review strictly a . . . court's

exercise of discretion denying leave to amend." <u>Albrecht v. Lund</u>, 845 F.2d 193, 195 (9th Cir. 1988). Even though the above-cited cases refer to the use of the abuse-of-discretion standard, the Ninth Circuit also has held that "'[d]ismissal without leave to amend is improper, unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.'" <u>Intri-Plex Techs., Inc. v. Crest Grp., Inc.</u>, 499 F.3d 1048, 1056 (9th Cir. 2007) (quoting <u>Sparling v. Daou (In re Daou Sys.)</u>, 411 F.3d 1006, 1013 (9th Cir. 2005)).

We review the bankruptcy court's denial of a motion for summary judgment de novo. <u>Boyajian v. New Falls Corp. (In re Boyajian)</u>, 564 F.3d 1088, 1090 (9th Cir. 2009); <u>Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)</u>, 367 B.R. 99, 103 (9th Cir. BAP 2007). Viewing the evidence in the light most favorable to the non-moving party, we determine whether the bankruptcy court correctly found that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. <u>Jesinger v. Nev. Fed. Credit Union</u>, 24 F.3d 1127, 1130 (9th Cir. 1994).

We review questions regarding the application of "res judicata, including issue and claim preclusion, de novo, as mixed questions of law and fact in which legal questions predominate." <u>Khaligh v. Hadaegh (In re Khaligh)</u>, 338 B.R. 817, 823 (9th Cir. BAP 2006), <u>aff'd</u>, 506 F.3d 956 (9th Cir. BAP 2007) (citing <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 321 (9th Cir. 1988); <u>Alary Corp. v. Sims (In re Associated Vintage Grp., Inc.</u>, 283 B.R. 549, 554 (9th Cir. BAP 2002)). "Once it is determined that preclusion doctrines are available to be applied, the actual decision to

13

apply them is left to the trial court's discretion."  Khaligh,
338 B.R. at 823 (citing Robi, 838 F.2d at 321) (further citations
omitted).

We review a bankruptcy court's application of judicial
estoppel for abuse of discretion.  Cheng v. K&S Diversified
Invs., Inc. (In re Cheng), 308 B.R. 448, 452 (9th Cir. BAP 2004)
(citing Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782
(9th Cir. 1999)).

**DISCUSSION**

**A.   The Bankruptcy Court Properly Granted Deutsche's Motion for
Judgment and Properly Denied Davies' Motion for Judgment**[15]

The bankruptcy court evaluates motions for judgment on the
pleadings under Rule 7012(b), which incorporates Civil Rule
12(c).  Fed. R. Bankr. P. 7012(b) ("Rule 12(b)-(i) F.R.Civ.P.
applies in adversary proceedings.").  "Where a [motion under
Civil Rule] 12(c) is used to raise the defense of failure to
state a claim, the motion for judgment on the pleadings faces the
same test as a motion under [Civil Rule] 12(b)(6)."  McGlinchy v.
Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).

Under Civil Rule 12(b)(6), a claim for relief may be
dismissed for "failure to state a claim upon which relief can be
granted."  Civil Rule 12(b)(6).  To avoid dismissal, the facts,
when accepted as true, must "state a claim to relief that is
plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

---

[15]Davies' failure to provide a statement of uncontroverted
facts and conclusions of law, coupled with the deficiencies in
Davies' Complaint and Davies' failure to address any defenses
asserted by Deutsche, convinces us that the bankruptcy court
properly denied summary adjudication as to all claims.

14

544, 570, 127 S. Ct. 1955, 1960 (2007). If a party's complaint has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.

When evaluating a motion to dismiss, "[t]wo working principles" must be considered: "[f]irst, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements when only 'supported by mere conclusory statements'"; and "[s]econd, determining whether a complaint states a plausible claim is context-specific requiring the court to draw on its experience and common sense." Ashcroft v. Iqbal, 566 U.S. __, __, 129 S. Ct. 1937, 1940 (2009) (citing Twombly, 550 U.S. at 555, 556)).

Where a complaint cannot be saved by any amendment, dismissal without leave to amend is proper. Intri-Plex Techs., Inc., 499 F.3d at 1056 (quoting In re Daou Sys., 411 F.3d at 1013).

**1.    The Declaratory Relief Claims**

     **a.    The Bankruptcy Court Properly Dismissed the Declaratory Relief Claims**

When an action for declaratory relief is duplicative of the relief sought under another cause of action, dismissal of the declaratory relief claim is proper. Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) (per curiam) (affirming the district court's dismissal of a request for a declaration as to defendants' liability for damages sought under other causes of action). See also Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009) (district court dismissed declaratory relief action where, among the relief sought, was a

15

declaration that defendants' security interest in the subject property was void, which relief plaintiffs sought under other causes of action).

Here, the bankruptcy court dismissed Davies' Declaratory Relief Claims because it determined that the relief requested under the Declaratory Relief Claims duplicated the relief request under the Quiet Title Claim.  We agree.

Davies' goal in bringing the Declaratory Relief claims was to obtain a determination that he owns the Property free and clear of all other claims and interests.  The Declaratory Relief Claims request the same relief and under California law this duplicates the cause of action.  In Ephraim v. Metropolitan Trust Co. of Cal., 28 Cal. 2d 824, 172 P.2d 501 (1946), for example, the California Supreme Court stated:

> a complaint which consists of two counts, one to quiet title to real property and the other, as incidental to the first count, to have declared void an instrument under which particular defendants assert title states only one cause of action. . . .  And where, as is true in the present pleading, the count to quiet title in regard to particularly named defendants clearly shows that it is based upon the same facts which are pleaded in the cause to remove a cloud, a general demurrer of those defendants should be sustained if the second count reveals a defect in plaintiff's title or does not state a cause of action to remove a cloud.

Ephraim, 28 Cal. 2d at 833, 172 P.2d at 507 (citations omitted). See also Dabney v. Philleo, 38 Cal. 2d 60, 68, 237 P.2d 648, 653 (1951) (when quiet title and declaratory relief action based upon same facts, only one cause of action stated).

Here, Davies' Declaratory Relief Claims are wholly derivative of his quiet title claim; were he to quiet title in the manner requested, it would be pointless to separately declare

16

that result.  Since Ephraim and Dabney require collapsing the two claims into one cause of action, the dismissal of the Declaratory Relief Claims reaches the sensible result that Davies should not be able to simultaneously seek to quiet title and a declaratory judgment as to that same title.[16]

The Declaratory Relief Claims are functionally equivalent to the Quiet Title Claim in another respect.  We acknowledge that Davies presents his Declaratory Relief Claims as claims that typically arise in the bankruptcy context, i.e., a request for a determination as to the validity and extent of a lien or the status of a creditor's claim.  However, Davies seeks a declaration that the Deed of Trust is null and void and that, to the extent Deutsche asserts an interest in the Property based on that Deed of Trust or on a claim arising from that Deed of Trust,

---

[16]In those California cases in which declaratory relief has been allowed along with a quiet title action, there has been some form of remedy requested in the declaratory relief action that could not be granted in a quiet title action alone.  See, e.g., Ephraim, 28 Cal. 2d 824, 172 P.2d 501 (quiet title action joined with declaratory relief action as to cancellation of instruments purporting to transfer property in trust); Marra v. Aetna Const. Co., 15 Cal. 2d 375, 101 P.2d 490 (1940) (quiet title action as to ownership joined with declaratory relief action as to enforceability of prior deed covenants that allegedly ran with the land).

We also do not believe that California's 1980 codification of the quiet title action disturbs the precedential effect of Ephraim and Dabney and the other decisions cited.  The 1980 codification essentially preserved the common law cause of action, and strengthened it by permitting the action to be in rem, thus binding unknown parties as well as those that are named.  See, e.g., Cal. Civ. Proc. Code §§ 762.060-762.070 (unknown defendants).  This enlargement of the relief permitted buttresses Ephraim's and Dabney's holdings, as the quiet title action is thus even more the single repository of the type of relief provided.

17

it has no interest or claim. In short, the Declaratory Relief Claims reduce to a challenge against any interest of, or claim by, Deutsche that arises from that Deed of Trust, which are the same claims and interests that are the subject of the Quiet Title Claim.

Finally, Davies' own allegations support our characterization of these claims. Davies alleged "that he holds an interest in the Property free and clear of any interest of defendants, in that the lien evidenced by the 'Deed of Trust' and its subsequent assignments has no value since it is wholly 'unsecured', and that accordingly, the 'Deed of Trust' is 'null and void.'" Compl. ¶ 82. He also alleged that "the lien evidenced by the 'Deed of Trust' has no value since it is wholly unsecured" and that "the 'Deed of Trust' and its subsequent assignments are null and void." Compl. ¶ 88. He further alleged that Defendants "claim[ed] an interest adverse to Plaintiff in the above-described property" based on that "legal nullity." Compl. ¶¶ 79, 116. These are allegations that would be at issue in any quiet title action.

Davies himself seems to have conceded our point - that his Declaratory Relief Claims are duplicative of his Quiet Title Claim - in his Motion for Judgment, maintaining that if his claims for declaratory relief and fraud "[we]re held to be accurate and Judgment [wa]s in Plaintiff's favor this Claim [the Quiet Title Claim] would be deemed proven and *Quiet Title would be the remedy*." Davies' Mot. for J. at 13 (emphasis supplied).

Davies' Declaratory Relief and Quiet Title Claims relate to the same Property. They involve the same interests. Davies'

18

objective under each cause of action is the same – to quiet title. To that end, an action to quiet title as governed by California law is the appropriate vehicle; an equivalent request for declaratory relief is not. For these reasons, we conclude that the Declaratory Relief Claims are redundant of the relief sought under the Quiet Title Claim. While Davies may have demonstrated some ingenuity in his attempt to use a claim for declaratory relief as an additional apparatus by which to obtain the same relief sought under another cause of action, the law does not accommodate such ingenuity. We therefore conclude that the bankruptcy court properly dismissed Davies' Declaratory Relief Claims.

> **b. The Bankruptcy Court did not Err When it Denied Davies Leave to Amend the Declaratory Relief Claims**

We do not see how any amendment could save the Declaratory Relief Claims from being subsumed under the Quiet Title Claim. As we have discussed above, the Declaratory Relief Claims are neither independent nor distinct from the Quiet Title Claim. We therefore conclude that the bankruptcy court properly denied leave to amend as to the Declaratory Relief Claims.

**2. The TILA Claim**

> **a. The Bankruptcy Court Properly Dismissed the TILA Claim**

TILA requires that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C. § 1641(g)(1). The notice must include:

19

> (A) the identity, address, telephone number of the new creditor;
> (B) the date of transfer;
> (C) how to reach an agent or party having authority to act on behalf of the new creditor;
> (D) the location of the place where transfer of ownership of the debt is recorded; and
> (E) any other relevant information regarding the new creditor.

Id. Actions under TILA "may be brought . . . within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  See also Consumer Solutions Reo LLC v. Hillery, 658 F. Supp. 2d 1002, 1007-08 (N.D. Cal. 2009) (dismissing TILA damages claim as barred by the one-year statute of limitations).

Davies' TILA Claim was barred by the one-year statute of limitations on such claims.[17]  Contrary to Davies' suggestion that the date of the 2010 Assignment should be used for the purposes of his TILA Claim, the bankruptcy court properly took judicial notice of the fact that the 2009 Assignment from MERS to Deutsche was dated August 10, 2009, and recorded on August 20, 2009.  See Mack v. S. Bay Beer Distribs. Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (stating that "matters of public record" are subject to judicial notice), overruled in part on other grounds by, Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104

---

[17]The bankruptcy court did not rely on the statute of limitations in reaching its decision.  Rather, it dismissed the TILA claim based on Davies' failure to plead actual damages.  As we may affirm the bankruptcy court's decision on any grounds fairly supported by the record, see Wirum v. Warren (In re Warren), 568 F.3d 1113, 1116 (9th Cir. 2009) (citations omitted), we affirm the bankruptcy court's decision to dismiss Davies' TILA claim on the grounds that the claim was time barred.  For this reason, we need not address Davies' argument that the bankruptcy court erred when it determined that to state a cause of action under TILA, a plaintiff must plead actual damages.

20

(1991); <u>Rosenfeld v. JP Morgan Chase Bank, N.A.</u>, 732 F. Supp. 2d 952, 959 (N.D. Cal. 2010) (taking judicial notice of documents routinely recorded in a county's official records). Any alleged violation of TILA would thus have occurred in September 2009. The Complaint was filed on January 7, 2011, well outside of the statute of limitations period, which lapsed in September 2010. We therefore conclude that the bankruptcy court properly dismissed Davies' TILA Claim.

### b. The Bankruptcy Court did not Err When it Denied Davies Leave to Amend the TILA Claim

The bankruptcy court originally dismissed Davies' TILA claim with leave to amend but subsequently denied leave to amend on Davies' request. On that basis, we conclude that the bankruptcy court properly denied leave to amend as to the TILA Claim.

Were Davies' waiver somehow insufficient to insulate the bankruptcy court's denial of leave to amend from reversal, however, Davies' TILA Claim was barred by the one-year statute of limitations on such claims. Thus, any amendment would be futile, as no amendment could cure this defect. Therefore, we conclude that the bankruptcy court's denial of leave to amend was also proper on these grounds.

### 3. The Fraud Claim[18]

#### a. The Bankruptcy Court Properly Dismissed the Fraud Claim

---

[18]Davies' Complaint describes this cause of action as "fraud in conveyance." We read this to mean "fraud" as under California law since we cannot otherwise decipher the legal theory to which these allegations supposedly relate.

21

"Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages." See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1105 (9th Cir. 2003) (internal quotations and citations omitted).

Davies' allegations as to this claim were as follows: "that neither 'MERS' nor [Deutsche] paid any consideration for the 'Promissory Note;'" "that if [Deutsche] purchased the 'Promissory Note' and paid 'MERS,' such assignment would constitute fraudulent conveyance"; that the Defendants committed fraud by processing falsified assignments of the Deed of Trust; and that Deutsche falsely represented that they were entitled to payment under the Note and that other representations regarding MERS were false. Compl. ¶¶ 102-105. Davies also alleged that "[i]n reliance on these representations, [he] was induced to make payments to these Defendants when they were not entitled to such money." Compl. ¶ 106.

Davies did not specify the dates on which any of these alleged fraudulent representations occurred. He did not provide any details as to the content of these alleged misrepresentations. In fact, Davies himself refers to some of these transactions as "unknown" or having occurred by "an unknown mechanism." Compl. ¶¶ 14, 16.

Davies similarly did not provide specific dates on which he made payments, which he made allegedly as a result of the fraudulent representations at issue, the amounts of these payments, or the methods of payment. In short, Davies' allegations did not include, as the heightened pleading standard

22

for fraud requires, "the who, what, when, where, and how of the misconduct charged." See Vess, 317 F.2d at 1106 (internal quotations and citations omitted). See also Civil Rule 9(b) ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ."). For these reasons, we conclude that the bankruptcy court properly dismissed the Fraud Claim.

**b.  The Bankruptcy Court did not Err When it Denied Davies Leave to Amend the Fraud Claim**

Even if Davies' allegations satisfied the applicable heightened pleading requirements, however, Davies could not offer any additional allegations to state a cause of action for fraud. The fact that any and all payments he tendered on the Note pre-date the August 2009 Assignment to Deutsche is fatal to any claim of fraud. We do not see how, if Davies made no payments after the 2009 Assignment, he can establish that he justifiably relied on any allegedly fraudulent representations made in connection with that assignment. For this reason, we conclude that the bankruptcy court properly denied leave to amend as to the Fraud Claim.

**4.  The Libel Claim**

**a.  The Bankruptcy Court Properly Dismissed the Libel Claim**

Under California law, "[l]ibel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his

23

occupation." Cal. Civ. Code § 45. "Publication means communication to some third person who understands the defamatory meaning of the statement and its application to the person to whom reference is made." Smith v. Maldonado, 72 Cal. App. 4th 637, 645, 85 Cal. Rptr. 2d 397, 402 (1999).

In the Complaint, Davies alleged that "[t]he conduct of Defendants constitutes libel that tends to defame, disparage, and injure Plaintiff in his business and reputation and has also caused pain and suffering," that "such libel has occurred on a continuing basis from approximately July 2009 through the present," and that such conduct was "willful, fraudulent, malicious and oppressive." Compl. ¶ 112.

We agree with the bankruptcy court that conduct is insufficient to support a cause of action for libel under California law. Without allegations as to any communications, of which the Complaint is entirely devoid, we conclude that the bankruptcy court properly dismissed the Libel Claim.

### b. The Bankruptcy did not Err When it Denied Davies Leave to Amend the Libel Claim

Even if Davies had alleged publication in a manner that satisfied one of the predicates to state a cause of action for libel, we do not see how such publication would give rise to the type of injury contemplated by the statute. We are not prepared to conclude that any communication relating to the events in this case would support a cause of action for libel under California law. For these reasons, we conclude that any amendment as to this claim would be futile and that the bankruptcy court properly denied Davies leave to amend the Libel Claim.

24

### 5. The Quiet Title Claim

#### a. The Bankruptcy Court Properly Dismissed the Quiet Title Claim

To state a cause of action to quiet title under California law, a plaintiff must provide a verified complaint, which includes:

(a) A description of the property that is the subject of the action. . . . In the case of real property, the description shall include both its legal description and its street address or common designation, if any.

(b) The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title. . . .

(c) The adverse claims to the title of the plaintiff against which a determination is sought.

(d) The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.

(e) A prayer for the determination of the title of the plaintiff against the adverse claims.

Cal. Civ. Proc. Code § 761.020. "[U]nder California law, a plaintiff seeking to quiet title in the face of a foreclosure must allege tender or an offer to tender of [sic] the amount borrowed." Mangindin, 637 F. Supp. 2d at 712 (citations omitted). See also Nool v. Homeq Servicing, 653 F. Supp. 2d 1047, 1056 (E.D. Cal. 2009) ("A mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee.") (citation omitted).

Among other deficiencies in Davies' Complaint, the bankruptcy court determined that Davies' failure to allege tender or an offer of tender of the amount borrowed rendered this claim

25

deficient. We agree. Even if the other allegations in Davies' Complaint otherwise stated a claim to quiet title, this failure in and by itself would be sufficiently fatal to this cause of action. For this reason, we conclude that the bankruptcy court properly dismissed the Quiet Title Claim.

**b.    The Bankruptcy Court did not Err When it Denied Davies Leave to Amend the Quiet Title Claim**

Davies has filed a Chapter 7 bankruptcy petition. Any allegation that he is able to tender the amount borrowed would be wholly inconsistent with his bankruptcy filing and his bankruptcy schedules, which reflect that he is insolvent. Moreover, Davies has not made payments since April 2009 nor has he placed any amounts relating to unpaid mortgage payments in a segregated bank account. For these reasons, any amendment to the Complaint as to this claim, specifically as to whether Davies is able to tender the amount borrowed, would be futile. We thus conclude that the bankruptcy court properly denied leave to amend as to the Quiet Title Claim.

**B.    The Bankruptcy Court Properly Determined the Doctrines of Issue Preclusion and Judicial Estoppel did not Apply**

**1.    Issue Preclusion**

Federal common law determines the preclusive effect of a federal judgment. Taylor v. Sturgell, 553 U.S. 880, 891 (2008); W. Sys., Inc. v. Ulloa, 958 F.2d 864, 871 n.11 (9th Cir. 1992) (citing Robi, 838 F.2d at 322). The party asserting issue preclusion must establish that (1) the issue was actually decided by a court in an earlier action, (2) the issue was necessary to the judgment in that action, and (3) there was a valid and final

judgment.  New Hampshire v. Maine, 532 U.S. 742, 748 (2001) (citing Restatement (Second) of Judgments §§ 17, 27 (1980)) (further citations omitted).

The bankruptcy court properly rejected Davies' argument that the order denying relief from stay on standing grounds precluded Deutsche from advocating its position here.  As has been previously explained by this Panel:

> Relief from stay proceedings . . . are primarily procedural; they determine whether there are sufficient countervailing equities to release an individual creditor from the collective stay.  One consequence of this broad inquiry is that a creditor's claim or security is not finally determined in the relief from stay proceeding. Johnson v. Righetti (In re Johnson), 756 F.2d 738, 740-41 (9th Cir. 1985) ("Hearings on relief from stay are thus handled in a summary fashion.  The validity of the claim or contract underlying the claim is not litigated during the hearing."); Grella v. Salem Five Cent Sav. Bank, 45 F.3d 26, 33 (1st Cir. 1994) ("We find that a hearing on a motion for relief from stay is merely a summary proceeding of limited effect . . . ."); First Fed. Bank v. Robbins (In re Robbins), 310 B.R. 626, 631 (9th Cir. BAP 2004).

Veal, 450 B.R. at 914.  For this reason, we conclude that the bankruptcy court properly determined that the order denying relief from stay on standing grounds did not have issue preclusive effect.

**2.   Judicial Estoppel**

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position."  Hamilton, 270 F.3d at 782 (citing Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600-01 (9th Cir. 1996)).  The aim of the doctrine is not only to prevent a party from gaining an advantage by asserting inconsistent positions,

27

but also to ensure "the orderly administration of justice and . . . the dignity of judicial proceedings," and to "protect against a litigant playing fast and loose with the courts." Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990).

We have tried to parse Davies' arguments that Deutsche is somehow judicially estopped from asserting its position in this case. First, Davies argues that Deutsche's position in the lift stay proceedings, based on an assignment from MERS, as nominee for Universal Mortgage, is inconsistent with Deutsche's current position: that it is the beneficiary under the Deed of Trust. Second, Davies argues that Deutsche, "as Trustee holds title for the benefit of a Trust that has been closed for over 3 years. Such inconsistency is judicially stopped [sic] by the judicial finding . . . that [Deutsche] has no legal standing." Davies' Mot. for J. at 8. Third, Davies argues that Deutsche is judicially estopped from denying a principal-agent relationship between it and OneWest. This last argument is based on a case as to which this Panel denied judicial notice on October 6, 2011. See supra note 14.

To the extent the first two arguments are mere variants of Davies' argument before the bankruptcy court, we agree with the bankruptcy court that Davies did not satisfy the predicates necessary to assert judicial estoppel. Thus, the bankruptcy court properly declined to apply the doctrine in this case.

We also conclude that Davies' third argument fails, but for a different reason. Davies presents it for the first time on appeal. By failing to demonstrate that he properly presented this argument to the bankruptcy court, he has waived the

28

argument, and we need not address the merits here.  See <u>Ellsworth v. Lifescape Med. Assocs., P.C. (In re Ellsworth)</u>, 455 B.R. 904, 919 (9th Cir. BAP 2011) (citing <u>Golden v. Chicago Title Ins. Co. (In re Choo)</u>, 273 B.R. 608, 613 (9th Cir. BAP 2002); <u>Branam v. Crowder (In re Branam)</u>, 226 B.R. 45, 55 (9th Cir. BAP 1998), <u>aff'd</u>, 205 F.3d 1350 (9th Cir. 1999) (unpublished table decision)).[19]

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order granting Deutsche's Motion for Judgment and the bankruptcy court's order denying Davies' Motion for Judgment.

---

[19]On appeal, Davies also argues for the first time that the doctrine of laches somehow applies in this case: "[L]aches also appl[ies] as the parties and the issues are the same.  The determination made with findings of fact as an appealable decision, and Deutsche Bank sat complacently while watching from the sidelines."  June 2011 Aplt. Opening Br. at 39.  The record does not show that Davies offered this argument to the bankruptcy court, and we need not entertain it here.  See <u>Ellsworth</u>, 455 B.R. at 919 (citations omitted).

However, even if Davies had properly raised the argument before the bankruptcy court, laches is typically available as a defense to a party against whom an action is brought.  See <u>Jarrow Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 835 (9th Cir. 2002) ("Laches is an equitable time limitation on a party's right to bring suit . . ., resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights.") (internal citations and citations omitted).  <u>See also</u> Fed. R. Civ. P. 8(c) (listing laches as an affirmative defense).  Given that Davies initiated the Adversary Proceeding from which this appeal arises, we consider this argument rather odd and misplaced.