**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FOREST GROVE SCHOOL DISTRICT,
          *Plaintiff-Appellee,*

          v.

T.A.,
          *Defendant-Appellant.*

No. 10-35022

D.C. No.
3:04-cv-00331-MO

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
October 5, 2010—San Francisco, California

Filed April 27, 2011

Before: Pamela Ann Rymer, Susan P. Graber, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea;
Dissent by Judge Graber

5459

**COUNSEL**

Mary E. Broadhurst, Eugene, Oregon, Bryan Michael Killian, Masai Dennis McDougall, David Bruce Salmons (argued), Bingham McCutchen, Washington DC, for the defendant-appellant.

Richard Gunther Cohn-Lee, Andrea L. Hungerford, Nancy L. Hungerford (argued), The Hungerford Law Firm, Oregon City, Oregon, for the plaintiff-appellee.

**OPINION**

BEA, Circuit Judge:

T.A., a former student in the Forest Grove School District ("Forest Grove"), appeals the district court's determination that he is not entitled to an award of reimbursement for his private school tuition under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(C). On remand from the Supreme Court's opinion and our opinion, *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078 (9th Cir. 2008), *aff'd*, 129 S. Ct. 2484 (2009), the district court held that equitable considerations did not support any award of private-school tuition at Mount Bachelor Academy as a result of Forest Grove's failure to provide T.A. with a Free Appropriate Public Education ("FAPE") under the IDEA. Because the district court did not abuse its discretion when it determined T.A.'s parents enrolled him at Mount Bachelor for non-educational reasons, we affirm.

I.   FACTS AND PROCEDURAL HISTORY

The facts of this case were published in *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1081-83 (9th Cir. 2008) ("*Forest Grove I*"), and we repeat them here only to the extent necessary to explain our decision today. T.A. was enrolled in the Forest Grove School District from kindergarten until the spring semester of his junior year in high school, when his parents removed him from public school and enrolled him at Mount Bachelor Academy—a private boarding school which charged $5,200 a month for room and board.

At Forest Grove High School, T.A.'s scholastic performance had been poor; he earned mostly C's and D's. When T.A. was a freshman, his parents requested that he be evaluated for a learning disability. If T.A. had a learning disability, he might have been eligible for special education services under the IDEA. *See* 20 U.S.C. § 1401(3)(A) (children with specific learning disabilities are eligible for services under the IDEA if "by reason thereof, [the child] needs special education and related services"). Although Forest Grove evaluated T.A. and concluded he did not have a specific learning disability, school staff noted in an internal memo that he might have Attention Deficit Hyperactivity Disorder (ADHD).[1] ADHD is a separate basis under which T.A. would have been eligible for special education services. *Id.* T.A.'s parents were informed in June 2001 he did not have a learning disability and was therefore ineligible for special education services. T.A. continued to earn mostly C's and D's throughout his sophomore and junior years of high school. Forest Grove did not undertake any additional action with respect to its internal memorandum that T.A. might have ADHD.

---

[1]As we explained in *Forest Grove I*, "ADHD is classified as a mental disorder. A person with ADHD often has symptoms similar to those experienced by a person with a learning disability, but ADHD is a disorder distinct from learning disabilities. . . . The evaluation of T.A. for a learning disability therefore did not encompass an evaluation for ADHD." *Forest Grove I*, 523 F.3d at 1081 n. 1.

In fall 2002—during T.A.'s junior year of high school—he began to use marijuana at least three or four times a day. Sometimes, T.A. was so highly dosed with marijuana he could not speak or get out of bed. T.A.'s parents found drug paraphernalia in his room. His parents also discovered he had made $1200 worth of "1-900" pornographic phone calls, and they removed the family computer from their home after they discovered T.A. had visited Internet pornography sites. On February 11, 2003, T.A. ran away from home, but was returned to his parents by the police several days later. In response to T.A.'s escalating behavioral problems, T.A.'s parents took him to Dr. Michael Fulop, a psychiatrist, who conducted several tests and evaluations of T.A. in late January and February 2003. After T.A. ran away from home—but without seeking intervention by, or services from, the school district—T.A.'s parents removed T.A. from school and enrolled him in a three-week program for troubled youth at Freer Wilderness Therapy Expeditions in March 2003.[2] At a family therapy session held at Freer, T.A. informed his parents he had used cocaine.

Dr. Fulop completed his report on T.A on March 15, 2003, while T.A. was enrolled at Freer. Dr. Fulop diagnosed T.A. with ADHD, as well as depression and marijuana addiction. On March 23, 2003—upon T.A.'s return from Freer—his parents immediately removed him from public school and enrolled him at Mount Bachelor Academy. Subsequently, on April 18, 2003, T.A.'s parents filed an IDEA complaint against Forest Grove, which claimed Forest Grove had not provided T.A. with a FAPE under the IDEA. As required by the IDEA, T.A.'s parents requested an administrative due process hearing. *See* 20 U.S.C. § 1415(f). The assigned hearing officer continued the matter to allow Forest Grove to evaluate T.A. for ADHD.

---

[2]Freer Wilderness Therapy Expedition is not a school; instead, it is a residential treatment program for troubled teens. Freer is licensed as a Mental Health and Drug and Alcohol treatment program by the state of Oregon.

On July 7, 2003, a team of Forest Grove's medical and educational specialists confirmed Dr. Fulop's diagnosis that T.A. had ADHD. On August 26, 2003, a similar team determined T.A. was not eligible for services or accommodations under the IDEA, because his ADHD did not have a severe adverse effect on his academic performance.

On January 26, 2004, the hearing officer assigned to T.A.'s case held that T.A. was disabled, that the diagnosis had a severe adverse effect on his academic performance, and that Forest Grove had thus failed to provide T.A. with a FAPE. Thus, the hearing officer held T.A.'s parents were entitled to reimbursement for the full cost of T.A.'s Mount Bachelor tuition.[3] Forest Grove appealed the hearing officer's decision in federal district court. The district court reversed the hearing officer's grant of reimbursement to T.A.'s parents. The district court held T.A. was statutorily ineligible for reimbursement of private school expenses under 20 U.S.C. § 1412(a)(10)(C) because he had never previously received special education. *Forest Grove Sch. Dist. v. T.A.*, 640 F. Supp.2d 1320, 1335 (D. Or. 2005). Section 1412(a)(10)(C) provides for private school reimbursement only for children with disabilities who are denied a FAPE in public school and "who previously received special education and related services." Further, the district court held that "[e]ven assuming that tuition reimbursement may be ordered in an *extreme* case for a student not receiving special education services," T.A.'s case was not sufficiently "extreme" to require such reimbursement. *Id.* at 1334 (emphasis added).

---

[3]T.A.'s parents also contended they were entitled to reimbursement for the cost of Dr. Fulop's evaluation, and for the cost of the Freer expedition. The hearing officer denied reimbursement for Freer because it was not an appropriate placement for a child with a disability. The hearing officer further denied reimbursement for Dr. Fulop's evaluation because T.A. first presented that claim to the hearing officer in his opening brief. Neither of these claims are the subject of this appeal.

We reversed. We held that under "general principles of equity," students who had not previously been diagnosed with disabilities—and thus, did not previously receive special education services—are nevertheless entitled to private school reimbursement under 20 U.S.C. § 1415(i)(2)(C), which provides that the court "shall grant such relief as the court determines is appropriate" in actions brought under the IDEA. *Forest Grove I*, 523 F.3d at 1088. Moreover, we found "nothing in § 1415(i)(2)(C), Supreme Court precedent, or our own precedent [to suggest] that tuition reimbursement is available only in *extreme cases* for parents who place their child in private school before receiving special education and related services in public school." *Id.* (emphasis in the original). We thus remanded this case to the district court to consider "all relevant factors in determining whether to grant reimbursement and the amount of the reimbursement." *Id.* at 1088-89. In part, we held:

> We are mindful that the Hearing Officer found that T.A.'s parents sent him to Mount Bachelor Academy not only because of his disabilities, but also for reasons unrelated to his disabilities (i.e., substance abuse and behavioral problems), and the district court would be acting within its discretion to consider that factor as well.

*Id.* at 1089. The Supreme Court affirmed. *Forest Grove Sch. Dist. v. T.A.*, 129 S. Ct. 2484 (2009).

On remand, the district court reconsidered the case in light of the factors under the "general principles of equity" we set out in *Forest Grove I*, 523 F.3d at 1088, and denied T.A. and his parents tuition reimbursement. The district court held that the "decisive factor in this case is that T.A.'s parents appear to have enrolled T.A. in [Mount Bachelor] not because of any disability recognized by the IDEA but because of his drug abuse and behavioral problems." The district court held the "timing of the change in schools is instructive," noting that

T.A.'s enrollment at Mount Bachelor followed his descent into increasingly severe drug addiction, his decision to run away from home, his calls to 1-900 sex lines, and his use of Internet pornography sites, none of which events were attributable to any IDEA-defined disabilities. Moreover, the district court noted that T.A.'s father said nothing on the Mount Bachelor application about T.A.'s ADHD or schoolwork in response to a question which asked "what specific events precipitated enrollment in the program?" Instead, T.A.'s father listed "inappropriate behavior, depression, opposition, drug use, runaway."

On appeal, T.A. contends the district court abused its discretion when it held T.A. and his parents were not entitled to reimbursement.

## II.   STANDARD OF REVIEW

We review for abuse of discretion a district court's equitable determination to grant or deny reimbursement for private school tuition under the IDEA. *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1084 (9th Cir. 2008). We reverse a district court's decision under the abuse of discretion standard only if the district court's decision was "[1] illogical, [2] implausible, or [3] without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

## III.   DISCUSSION

**[1]** We first reject T.A.'s contention that, as a matter of law, his parents' subjective reasons for private school enrollment cannot be a valid equitable consideration. In *Forest Grove I*, we specifically held:

> We are mindful that the Hearing Officer found that T.A.'s parents sent him to Mount Bachelor Academy not only because of his disabilities, but also for rea-

sons unrelated to his disabilities (i.e., substance abuse and behavioral problems), and the district court would be acting within its discretion to consider that factor as well.

523 F.3d at 1089. That holding is the law of the case, and no exception to the doctrine applies here.

**[2]** We disagree with the dissent that this sentence is a "finding of fact" which required the district court to hold that T.A.'s enrollment was precipitated in part by his disabilities. Contrary to the dissent's assertions, *see* Dissent at 5475 n. 1, the hearing officer never made an explicit finding of fact as to the reasons T.A.'s parents enrolled him at Mount Bachelor.[4] And as an appellate court, we are not in the business of making findings of fact. The passage cited above simply stated that the district court had discretion to consider the reasons for T.A.'s enrollment at Mount Bachelor as an equitable factor on remand. The section in which this sentence was included instructed the district court, under general principals of equity, to consider "all relevant factors in determining whether to grant the reimbursement and the amount of the reimbursement."[5] *Forest Grove I*, 523 F.3d at 1088-89.

---

[4]On the contrary: although the hearing officer *generally* discussed both T.A.'s behavioral and academic difficulties and the dual *services* Mount Bachelor provided, it held "it was T.A.'s escalating drug abuse, depression and out of control behavior that *caused* his parents to remove him . . . from [Forest Grove High School.]" (emphasis added). As the hearing officer made no explicit factual finding as to the reasons for enrollment at Mount Bachelor—and the closest it came to doing so suggested enrollment was precipitated *exclusively* by drug abuse, depression, and behavioral problems—Forest Grove should not be penalized for its failure to appeal this nonexistent factual finding.

[5]We also find unpersuasive the dissent's contention that the district court was required explicitly to state that it was rejecting the Hearing Officer's factual findings. *See* Dissent at 5474. Nothing in *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993) requires a district court to recite some liturgical phrases effectively to reject the Hearing Officer's factual finding, and here (as discussed *infra*), the district court's analysis was sufficient to support its factual findings.

Moreover, even *were* we to read this passage as "fact-finding" on appellate review—fact-finding which required the district court to accept that T.A. was sent to Mount Bachelor for both reasons related and unrelated to his disability—the district court was *not* required to award reimbursement to T.A. simply because T.A.'s enrollment in private school was motivated *in part* by his disabilities. Section 1415(i)(2)(C)(ii) —the statute under which we instructed the district court to consider possible reimbursement under "general principles of equity," *Forest Grove I*, 523 F.3d at 1088—provides that "the court . . . basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). The "preponderance of the evidence" standard necessarily requires the district court to *weigh* the equitable factors. Even *if* the district court were bound by a factual determination that T.A.'s enrollment was motivated by reasons both related and unrelated to his disabilities, the court could have held the non-disability reasons so outweighed the disability reasons as to make reimbursement inequitable, and hence inappropriate under § 1415(i)(2)(C)(iii).

Indeed, our remand order instructed the district court to "consider all relevant factors *in determining whether to grant reimbursement*." *Forest Grove I*, 523 F.3d at 1088 (emphasis added). Affirming our decision, the Supreme Court similarly instructed the district court to consider all equitable factors "in determining *whether* reimbursement for some or all of the cost of the child's private education is warranted." *Forest Grove*, 129 S.Ct. at 2496 (emphasis added). If indeed the "factual" finding that T.A. enrolled at Mount Bachelor for reasons related to his disability was the law of the case—and if *any* disability-related motivation for enrollment at Mount Bachelor requires at least some reimbursement—these remand orders would not have instructed the district court to determine *whether* reimbursement was required. Instead, the remand orders would simply have instructed the district court to determine the *amount* of reimbursement to which T.A. was

entitled. We, and later the Court, remanded for determination of *liability* for reimbursement, not solely for *damages*.

**[3]** In any event, we hold that there was sufficient evidence in the record to support the district court's factual determination that T.A.'s parents enrolled him at Mount Bachelor solely because of his drug abuse and behavioral problems. Our standard of review bears reiteration: to find the district court made a "clearly erroneous finding of fact," this court must find that the district court's determination was "[1] illogical, [2] implausible, or [3] without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d 1263. Here, there were ample facts in the record to support the district court's conclusion that T.A. enrolled at Mount Bachelor solely for non-academic purposes. As the district court noted, T.A.'s parents decided to enroll him at Mount Bachelor directly after T.A.'s behavioral and drug problems escalated. Indeed, although T.A.'s parents had sought IDEA academic services through Forest Grove in 2001, they did not seek a re-evaluation of T.A. in 2003 until nearly a month *after* they had already enrolled him at Mount Bachelor.[6] Moreover, T.A.'s father's answer to the one question on the Mount Bachelor application which asked which "specific events precipitated" enrollment mentioned *only* T.A.'s behavioral and drug problems, not his academic difficulties. Thus, the district court's determination that T.A.'s parents enrolled him at Mount Bachelor because of his drug abuse and behavioral problems was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.*

**[4]** The dissent would reverse the district court because "the only support for the district court's conclusion concerning the parents' reasons is one response to one question . . . out of an 18-page application." Dissent at 5477. But as an ini-

---

[6]Such an evaluation, of course, was required if the parents were to be reimbursed the Mount Bachelor tuition as a result of the school district's failure to provide a FAPE. *See generally* 20 U.S.C. § 1415.

tial matter, the district court did *not* "view" the response in isolation. On the contrary, the district court explicitly held that it considered T.A.'s Mount Bachelor application *in conjunction* with the timing of T.A.'s enrollment at Mount Bachelor, related to the events which showed his escalating drug and behavioral problems in the months leading up to his enrollment. Moreover, the district court's focus on the "specific events" question was not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1263. The "specific events" question was the sole question on the Mount Bachelor application which asked what *precipitated* T.A.'s enrollment at Mount Bachelor. Therefore, the district court quite reasonably concluded that the "specific events" question was particularly useful in determining T.A.'s parents' motivation in enrolling him at Mount Bachelor.

**[5]** We also find no clear factual error in the district court's determination that "T.A.'s father said nothing on the [Mount Bachelor Academy] application about . . . T.A.'s trouble with his school work." The district court's determination that T.A.'s father did not mention his school work on the Mount Bachelor application came in the context of the district court's discussion of the application question: "What specific events precipitated enrollment to this program?" Moreover, the topic sentence of the paragraph in which the district court's factual determination is included rejects T.A.'s counsel's assertion at oral argument that "inappropriate and oppositional behavior and drug use could be symptoms of T.A.'s ADHD and that by listing them on his application, T.A.'s father was enrolling T.A. in MBA as a result of his ADHD." "Inappropriate behavior," "opposition," and "drug use" were three of the "specific events" listed by T.A.'s father in response to the question about what "precipitated" T.A.'s enrollment at Mount Bachelor. Thus, read in context, the district court's determination that T.A.'s father said nothing about T.A.'s trouble with school work was in reference to his father's answer to the "specific events" question. We thus cannot con-

clude that the district court's factual determination was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.*

It is true that T.A.'s father referenced T.A.'s academic difficulties and ADHD in response to two questions on the lengthy Mount Bachelor application: 1) "List any academic or learning differences . . . include . . . ADD, ADHD, etc . . ."; and 2) "If at any time the student had been diagnosed as having attentional or emotional problems: What was the diagnosis?" It is also true that T.A.'s father mentioned several academic objectives he hoped T.A. would achieve at Mount Bachelor. But the fact that T.A.'s father listed "ADHD" in response to questions which *specifically asked him to list that condition* does not compel the conclusion that T.A. was enrolled at Mount Bachelor *because* of his ADHD. Nor does the fact that T.A.'s father hoped T.A. would achieve some academic gains at Mount Bachelor Academy—which is, after all, a school—compel the conclusion that T.A. was enrolled *for academic reasons*. This is particularly true in light of the fact that T.A. was enrolled at Mount Bachelor after several months of escalating drug abuse and behavioral problems— and *directly after* he attempted to run away from home—and not during the two-year period when ADHD and poor scholastic performance alone, and not drugs and pornography, were the problem.

**[6]** The dissent contends our decision today "punishes" parents who seek to address "all of their child's needs." Dissent at 5479. Hardly. Our decision today merely affirms the district court's fact-specific weighing of the equities in *this* case under our deferential abuse of discretion standard. Thus, contrary to what the dissent contends, our decision does not establish a rule of law which requires parents who "seek to address all of their child's needs" to "answer each and every question with the response: 'Disability.' " *Id.* Instead—in light of the timing of T.A.'s enrollment at Mount Bachelor, and a review of his Mount Bachelor application—we con-

clude that *in this case* the district court's determination that T.A. enrolled at Mount Bachelor due to his behavior and drug problems was not illogical, implausible, or without support in inferences which may be drawn from facts in the record.[7] *Hinkson*, 585 F.3d at 1262. The dissent apparently reads the record in this case differently than did the district court. Our role, however, is solely to determine whether the district court abused its discretion, not to evaluate the record *de novo*.[8]

**AFFIRMED.**

---

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

Until the most recent iteration of this case, it has been completely undisputed that T.A.'s parents sent him to Mount Bachelor Academy for two kinds of reasons: reasons related

---

[7]Moreover, contrary to the dissent's contention, the district court did not deny reimbursement "only because of its view that the parents' reason for enrollment was the 'decisive factor.'" Dissent at 5479. The district court also held:

> T.A.'s parents do not appear to have expended significant effort to secure T.A.'s place at [Mount Bachelor]. In fact, T.A. was enrolled at [Mount Bachelor] ten days after Dr. Fulop recommended the school. T.A.'s parents do not appear to have done significant research into schools dealing with children with ADHD and depression to determine the best placement for T.A . . . . *This factor weighs against requiring the District to reimburse T.A. for the cost of [Mount Bachelor]*, particularly in light of the evidence that T.A.'s parents enrolled him at [Mount Bachelor] for reasons other than his ADHD and depression.

Emphasis added.

[8]To paraphrase Judge Farris's comment in *Li v. Ahscroft*, 378 F.3d 959, 964 n. 1 (9th Cir. 2004): Our dissenting colleague differs from us on what is the appropriate appellate function. She would retry. We are content to review.

to his disability and reasons unrelated to his disability. We need look no further than our original opinion. "[T]he Hearing Officer found that T.A.'s parents sent him to Mount Bachelor Academy not only because of his disabilities, but also for reasons unrelated to his disabilities . . . ." *Forest Grove Sch. Dist. v. T.A.*, 523 F.3d 1078, 1089 (9th Cir. 2008) (emphasis added), *aff'd*, 129 S. Ct. 2484 (2009). "The district court adopted all of the Hearing Officer's factual findings, and the [Forest Grove] School District has not appealed any of those findings." *Id.* at 1087 n.10; *see also* 129 S. Ct. at 2489 ("The District Court accepted the hearing officer's findings of fact . . . .").

On remand, the district court found otherwise. The district court found that T.A.'s parents enrolled him at "MBA [Mount Bachelor Academy] *not* because of any disability recognized by the IDEA [Individuals with Disabilities in Education Act] but because of his drug abuse and behavioral problems." (Emphasis added.) Under any standard of review, I am at a loss as to why the district court did not clearly err. If it is established that both X *and* Y caused an event, then a finding that only X, but not Y, caused the event is clearly erroneous. In so ruling, the district court erred in four ways.

First, its decision contravenes the doctrine of the law of the case. Because the School District did not appeal the two-reasons factual finding in the original appeal, the district court lacked authority to reconsider that finding. *See United States v. Phillips*, 367 F.3d 846, 856 (9th Cir. 2004) ("The law of the case doctrine precludes a court from reconsidering an issue that it has already resolved.").

Second, the district court's decision contravenes our case law establishing that the court must provide a sufficient explanation when it rejects an agency's factual finding. *See Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1474 (9th Cir. 1993) ("The court, in recognition of the expertise of the administrative agency, must consider the findings carefully

and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole. . . . [But] courts are not permitted simply to ignore the administrative findings." (citations and internal quotation marks omitted)). Here, the district court never stated that it was rejecting the Hearing Officer's factual finding—although it was—and, therefore, never undertook an appropriate analysis. Instead, the court simply ignored the administrative finding, which it may not do. *Id.*

In addition to those independent and sufficient reasons to reverse, the district court's decision lacks support in the record, its third reversible error. Overwhelming evidence, including testimony, doctor's records, and other documents, demonstrate that T.A.'s parents enrolled T.A. at Mount Bachelor Academy *both* for reasons *unrelated* to his disabilities *and* for reasons *related* to his disabilities. It came as no surprise that the Hearing Officer found that *both* reasons motivated T.A.'s parents. Indeed, the School District did not dispute that factual finding before the Hearing Officer, before the district court, before this court, or before the Supreme Court. Even after we reiterated in our opinion the Hearing Officer's factual finding,[1] the School District did not dispute that finding in its petition for rehearing or in its petition for certiorari.

One of the many documents supporting the Hearing Officer's factual finding was the Mount Bachelor Academy application. When T.A.'s parents enrolled him at Mount Bachelor Academy, his father completed an 18-page application regard-

---

[1] I am puzzled by the majority's assertion that I claim that we, the appellate court, made a finding of fact in our original opinion. Op. at 5468. We did not. But we did state the undisputed fact that "*the Hearing Officer found*" that the parents' reasons were dual: related to T.A.'s disability and unrelated to T.A.'s disability. *Forest Grove*, 523 F.3d at 1089 (emphasis added).

ing T.A. and his needs. The father's responses make it crystal clear that T.A.'s parents enrolled T.A. both for reasons unrelated to his disabilities and for reasons related to his disabilities. Concerning T.A.'s disabilities, his father stated on the application that his son's "learning difficulties" included "verbal processing [and] ADHD"; he stated that T.A. had been diagnosed with "ADHD" and "verbal processing difficulty"; and he stated that his "specific objectives" for T.A. included "improved verbal processing skills" and "study habits."[2]

In reaching its conclusion that T.A.'s disabilities played no role in the parents' decision, the district court impermissibly relied on only one answer, taken out of context. In response to the one question that queried which "specific events precipitated enrollment to this program," T.A.'s father listed only reasons unrelated to T.A.'s disabilities; he did not state "ADHD" or "school difficulties." But viewing that response in isolation makes no sense. As noted above, T.A.'s father repeatedly expressed his desire, on the very same application form, that the private school address T.A.'s ADHD and school difficulties, including in his responses to the surrounding questions. And, also as noted above, numerous documents and other evidence supported the Hearing Officer's factual finding.

Were the district court's myopic focus on *one* response out of dozens not already apparent from its factual finding concerning the parents' reasons for enrollment, the court's next factual finding would remove all doubt. The district court found that "T.A.'s father said nothing on the MBA application about the one ADHD symptom for which the School Dis-

---

[2]Those responses are not surprising. Months before enrollment at Mount Bachelor Academy, T.A.'s parents had hired a doctor to evaluate T.A.'s needs. As the Hearing Officer found, that doctor recommended that T.A.'s parents send T.A. to Mount Bachelor Academy so that "he could work on drug issues *and school related issues and address* both *his ADHD* and his depression." Hearing Officer's Decision at 23 (emphases added). No one has ever challenged that factual determination.

trict could be liable, T.A.'s trouble with his school work." Again, the record belies that finding. For example, T.A.'s father stated on the application that T.A.'s "learning difficulties" included "has a hard time with math," "tests poorly due to speed," "low working memory," and "math disability"; and his "specific objectives" for T.A. included "improved verbal processing skills" and "study habits." The district court clearly erred.

The majority does not defend the district court's finding on its own terms. *See op.* at 5471-72. Rather, the majority explains that the district court did not actually mean what it plainly said—that "T.A.'s father said nothing *on the MBA application* about the one ADHD symptom for which the District could be liable, T.A.'s trouble with his school work." (Emphasis added.) According to the majority, the district court really meant that, "*in response to one question* on the MBA application, T.A.'s father said nothing about the one ADHD symptom for which the District could be liable, T.A.'s trouble with his school work." I cannot accept the majority's blatant revision of the district court's opinion or its refusal to address what the court in fact wrote.

In the final analysis, the only support for the district court's conclusion concerning the parents' reasons is one response to one question regarding the specific events that precipitated enrollment, out of an 18-page application. The district court's reliance on the triggering event alone is a fourth reversible error, this time another error of law.

A child may have a range of special needs stemming from several sources, which might include lack of adequate parenting; inability to speak English; bullying class-mates; drug abuse; anger; laziness; and physical disabilities. The events that finally trigger a decision to send one's child to private school may or may not relate to the child's disabilities. But the fact that a particular event precipitates enrollment does not negate the fact that the parents' decision *also* is meant to

address the child's disability-related needs. This is particularly true when all of the evidence confirms that, although the triggering events may not have related to disability, the parents undeniably chose a placement in order to meet the child's disability-related special needs.

This case presents an excellent example. For years, T.A.'s parents sought special services under the IDEA for T.A. and, for years, the School District refused to provide the required services. T.A.'s disabilities and special needs went unmet, and he performed poorly at school. Like many teenagers, while in high school, T.A. began using marijuana, started getting into trouble, and became defiant toward his parents. At wit's end, T.A.'s parents hired a doctor to evaluate *all* of T.A.'s needs. T.A. then ran away from home for a few days. After that episode, the doctor concluded his evaluation and recommended that T.A.'s parents send T.A. to Mount Bachelor Academy so that "he could work on drug issues and *school related issues* and address both his *ADHD* and his depression." Hearing Officer's Decision at 23 (emphases added). One cannot fault the parents for following their doctor's considered recommendation.

It comes as no surprise, then, that T.A.'s father peppered the Mount Bachelor Academy application with his desire to treat T.A.'s disability and disability-related needs. It also comes as no surprise that T.A.'s father listed as the triggering events the facts that T.A. had run away from home and abused drugs. It was those non-disability-related events that ultimately *triggered* the decision to seek private placement, but the parents expressly sought to *meet their son's disability-related special needs* as well—special needs that the School District repeatedly had refused to provide. It is clear that T.A.'s parents' intentions were to meet *all* of T.A.'s needs: not just his disability-related needs, but also not just his non-disability-related needs.

When the parents of a child face a recalcitrant school district that refuses even to acknowledge that it must provide ser-

vices under the IDEA, and the child also has non-disability-related special needs, what should the parents do? One lesson to be learned from today's majority decision is that it is much safer if the parents seek treatment *only* for the child's disability-related needs. That conclusion runs entirely contrary to the spirit of the IDEA and to common sense. *See C.B. v. Garden Grove Unified Sch. Dist.*, No. 09-56588, 2011 WL 1108254 (9th Cir. Mar. 28, 2011). Alternatively, if the parents prudently seek to address all of their child's needs, they would be wise to answer *each and every question* with the response: "Disability." Nothing in law or equity requires such a formalistic approach. T.A.'s parents are to be commended, not punished, for seeking to treat all of T.A.'s special needs. They also should be commended, not punished, for responding honestly and accurately to the questions on the application form, rather than concerning themselves with what might look best to a reviewing court in later years.

Everyone agrees that the School District denied T.A. a free appropriate public education; everyone agrees that T.A.'s placement at Mount Bachelor Academy was proper; and everyone agrees, as the district court found, that many equitable factors support reimbursement. Indeed, the district court denied complete reimbursement *only* because of its view that the parents' reasons for enrollment was the "decisive factor." Because the district court's analysis of that factor is clearly incorrect, no equitable factors support the complete denial of reimbursement. T.A.'s parents are entitled to reimbursement.[3] The majority's sanctioning of the contrary result under the guise of deferential review is deeply disappointing.

---

[3]To be clear, the fact that the parents chose Mount Bachelor Academy in part for reasons unrelated to T.A.'s disability, combined with the school's high cost, could support a *reduction* in reimbursement. But no factor supports the complete *denial* of reimbursement altogether.