NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-10-1499-MkLaPa |
| | ) | |
| STEPHEN LAW, | ) | Bk. No. LA 04-10052-TD |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STEPHEN LAW, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| ALFRED H. SIEGEL, Chapter 7 | ) | |
| Trustee, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on January 20, 2012
at Pasadena, California

Filed - February 1, 2012

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Thomas B. Donovan, Bankruptcy Judge, Presiding

Appearances:   Daniel Gill of Ezra Brutzkus Gubner LLP argued on behalf of Appellee Alfred Siegel, Chapter 7 Trustee; Stephen Law, in propria persona, did not appear for oral argument.

Before: MARKELL, LAFFERTY[**] and PAPPAS, Bankruptcy Judges.

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[**]Hon. William J. Lafferty, III, U.S. Bankruptcy Judge for the Northern District of California, sitting by designation.

Debtor Stephen Law ("Law") appeals the bankruptcy court's approval of the Final Report ("Final Report") of chapter 7[1] trustee Alfred H. Siegel ("Trustee") and its award of final fees to the Trustee and his professionals. We AFFIRM IN PART, AND VACATE AND REMAND IN PART.

**FACTS**

Law filed his chapter 7 bankruptcy case over eight years ago, on January 5, 2004. He is no stranger to our court or to the Court of Appeals, as he has appealed many of the bankruptcy court's rulings.[2] The history we glean from these prior appeals

---

[1]All chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, as enacted and promulgated prior to October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, April 20, 2005, 119 Stat. 23 ("BAPCPA"). All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2]As we stated in one of our prior decisions:

The many disputes involving [Law] arising in his bankruptcy case have resulted in over a dozen appeals to the Panel and several to the Court of Appeals. In its many decisions issued over the years, the Panel has provided in great detail the facts surrounding [Law's] bankruptcy filings, and his numerous contests with the chapter 7 trustee concerning the administration of the bankruptcy estate. See, e.g., Law v. Siegel (In re Law), BAP nos. CC-05-1303/1344 (9th Cir. BAP December 29, 2006), aff'd 308 F. App'x 161 (9th Cir. 2009); Lin v. Siegel (In re Law), BAP nos. CC-06-1427/1379 (9th Cir. BAP July 10, 2007), aff'd 308 F. App'x 152 (9th Cir. 2009); Law v. Siegel (In re Law), BAP no. CC-07-1127 (9th Cir. BAP October 5, 2007).

Law v. Siegel (In re Law), 2009 WL 7751415 at *1 n.4 (9th Cir. BAP Oct. 22, 2009), aff'd, 435 F. App'x 697 (9th Cir. Jun. 6, 2011).

2

reflects that Law has opposed the Trustee's administration of the bankruptcy estate at every step. For our purposes, a detailed account of the entire case history is unnecessary. An overview will suffice.

**1. Overview**

The disputes between Law and the Trustee have centered on Law's former residence in Hacienda Heights, California ("Property") and the proceeds from its sale. The Property was Law's only significant asset. He claimed a $75,000 homestead exemption in the Property, to which the Trustee did not object. In addition to the exemption claim, Law asserted in his schedules that the Property was encumbered by a first deed of trust in favor of Washington Mutual Bank and a second deed of trust in favor of "Lin's Mortgage & Associates" (the "Lin Deed of Trust"). According to Law, the Property was only worth about $363,000 at the time of his bankruptcy filing.

Based on his exemption claim and the scheduled liens against the Property, Law argued that the Property had no value to the estate, and he vigorously opposed turnover of the Property to the Trustee and the Trustee's efforts to sell the Property. But the bankruptcy court ordered turnover of the Property and approved its sale. The Trustee ultimately was successful in selling the Property for a sale price of approximately $680,000.

Only one creditor, Cau-Min Li ("Li"), timely filed a proof of claim. The Trustee reached a compromise/settlement with Li concerning that claim, which was based on a prepetition judgment in the principal amount of $131,821.74. The court approved the settlement, pursuant to which the Trustee paid Li $120,000.00 out

3

of the proceeds from the sale of the Property. As with every other Trustee action referenced herein, Law vigorously opposed the settlement and the settlement payment.

In addition, the bankruptcy court twice entered orders granting the Trustee's motions to surcharge Law's homestead exemption. On appeal from the first surcharge order, the Panel reversed because the bankruptcy court had based that order not on proof of Law's misconduct but rather merely on his litigiousness. However, on appeal from the second surcharge order, the Panel affirmed. Unlike the first surcharge order, the second order was based on the bankruptcy court's findings: (1) that the Lin Deed of Trust was a fiction perpetuated by Law in an attempt to preserve for himself the equity in the Property and to defraud his creditors and the court, and (2) that the harm to the estate resulting from Law's misconduct far exceeded the amount of Law's $75,000 homestead exemption. In re Law, 2009 WL 7751415 at *4. Among other things, the Panel held that the bankruptcy court's findings were not clearly erroneous and that the bankruptcy court did not abuse its discretion when it granted the second surcharge motion based on these findings. Id. at *8. The Court of Appeals affirmed both of our surcharge decisions. 308 F. App'x at 161; 435 F. App'x at 697.

**2. Trustee's Final Report and the Professional Fee Applications**

On October 20, 2009, pursuant to Rule 2016-1(c)(4)(a) of the Local Rules for the United States Bankruptcy Court for the Central District of California ("Local Rules"), the Trustee filed and served notice of his intent to file his Final Report. In response to this notice, Trustee's counsel filed their second and

4

final fee application on November 11, 2009, and Trustee's accountants filed their first and final fee application on March 22, 2010.[3]

On September 14, 2010, the Trustee filed his Final Report. As part of his Final Report, the Trustee requested fees in the amount of $25,298,45 pursuant to §§ 326(a) and 330(a) as compensation for his services as Trustee. As stated in the Final Report, the Trustee was eligible under § 326(a) for a maximum compensation award of up to $54,395.00, based on gross receipts he obtained and disbursed on behalf of the estate of $1,018,169.15. The Trustee's counsel and his accountants filed separate applications for compensation pursuant to Rule 2016, but, importantly, the Trustee did not.

At the same time he filed his Final Report, the Trustee filed his Notice of Trustee's Final Report and Applications for Compensation and Deadline to Object ("Notice"), which was served on Law. The Notice included a summary ("Summary") of the Final Report and of the fee applications filed by the Trustee's professionals. The Summary identified the name of each professional applying for fees and the amount of fees and expenses applied for as follows:

---

[3]The Panel obtained copies of these documents by accessing the bankruptcy court's electronic docket. The Panel can take judicial notice of their filing and contents. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

5

| Reason/Applicant | Fees | Expenses |
|---|---|---|
| Trustee: ALFRED H. SIEGEL, TRUSTEE | $25,298.45 | $0 |
| Attorney for trustee: EZRA, BRUTZKUS, GUBNER[4] | $106,462.00 | $0 |
| Accountant: GROBSTEIN, HORWATH & COMPANY | $3,985.33 | $0 |

On October 20, 2010, Law filed an opposition to the Final Report and the fee applications ("Opposition"). According to Law, the Trustee's proposed fee of $25,298.45 was unreasonable because, according to Law, the Trustee only appeared in court "two or three times." In addition, Law argued that the proposed fee exceeded the statutory maximum allowed under § 326(a). By Law's reckoning, the Trustee only garnered on behalf of the estate roughly $500,000, rather than the $1,018,169.15 in gross receipts and disbursements the Trustee reported. Law also argued that the amounts already awarded and paid to the Trustee's counsel, and the additional amount applied for, were unreasonable

[4]Neither the Notice nor the Summary refers to Trustee's counsel's first interim fee application or the amounts awarded and paid to Trustee's counsel pursuant to that application. More specifically, Trustee's counsel filed in 2008 a first interim fee application seeking approval of over $600,000 in fees and $38,532.19 in expenses. The court granted the interim fee application and overruled Law's opposition thereto. The order on the interim fee application expressly allowed and authorized immediate payment of the full amount of expenses requested, plus $211,467.81 in fees, for a total interim payment of $250,000. The Final Report reflects that the Trustee paid the $250,000 to his counsel.

6

in relation to the benefit to the estate.[5]

Law further asserted that the court should not make any determination on the Final Report and the fee applications until his appeals of certain orders were fully resolved. More specifically, Law had taken appeals to our court from the bankruptcy court's second surcharge order and from its order directing the Trustee to pay the $120,000 owed to Li on account of the Trustee's prior settlement with her. When the Panel ruled against Law in both of these appeals, he took further appeals to the Court of Appeals. While the appeals to the Court of Appeals were pending when Law filed his opposition, the Court of Appeals has since then decided both of these appeals against Law. See In re Law, 435 F. App'x at 697; Law v. Li (In re Law), 430 F. App'x 620 (9th Cir. May 3, 2011).

Finally, Law complained that the Trustee gave inadequate notice of the Final Report and the fee applications. Law admitted that he had received the Notice, but Law argued that the entire Final Report and all fee applications should have been served on all creditors and interested parties, including Law himself.

On November 3, 2010, the bankruptcy court held the hearing on the Final Report and on the fee applications. The court rejected Law's assertion that the Trustee only had collected roughly $500,000 on behalf of the estate. As the court pointed

---

[5]Law has not argued on appeal that the Trustee's counsel's fees were unreasonable, so he has waived that argument. See Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002); Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (9th Cir. 1999).

out, the Trustee in his Final Report certified under penalty of perjury that he had received and disbursed over $1,000,000 in receipts, and Law offered no evidence to counter the Trustee's figures. The court also rejected Law's argument that the court should not render its ruling on the Final Report and the fee applications until all of his appeals had been fully resolved. According to the Court, there was no need or requirement to wait for all of Law's appeals to run their course because Law had not obtained any stay pending appeal. In addition, the court rejected Mr. Law's complaint regarding his not receiving copies of the Final Report or the fee applications. In so ruling, the court apparently relied on Law's admission that he had received the Notice and further noted that Law was aware that the Final Report and the fee applications were available upon request from either the Trustee or the court's website.

Accordingly, the court approved the Final Report and granted the fee applications. The court did not make any express findings regarding the Trustee's fee request, but the court did make several comments regarding the fees sought by the Trustee's counsel. The gist of these statements was that the value of the services provided by Trustee's counsel far exceed the amount that they were going to receive in compensation for the services they rendered. As the court explained, the lack of sufficient compensation simply reflected that there were insufficient funds in the bankruptcy estate to cover the Trustee's counsel's time and expenses incurred in dealing with Law's allegations, arguments and objections: "whatever money they receive in this case would seem to be grossly inadequate for all of the work that

8

[Trustee's counsel] have gone through." Hr'g Tr. (Nov. 3, 2010) at 14:11-13. The court also pointed out that Trustee's counsel had not sought any fees in their second and final fee application beyond the half million dollars or so they had sought in their first interim fee application, which the court had approved in full and determined to be reasonable. In short, according to the court, the limitation on compensation to Trustee's counsel was a function of the limited amount of estate assets available and not a reflection of the reasonableness of the fees requested.

The court entered an order on November 19, 2010 ("Fee Order") awarding fees to the Trustee and his professionals. Even though the Notice only had referenced those amounts that the Trustee anticipated actually distributing to the professionals, and even though there were insufficient funds in the estate to pay any more to the professionals beyond the amounts noticed,[6] the Fee Order allowed fees and expenses in amounts greater than that set forth in the Notice, as follows:

---

[6]Indeed, on June 30, 2011, after Law commenced this appeal, the Trustee filed his final account and distribution report, which reflected that the Trustee ultimately received $25,300.81 in total compensation; his counsel received, in aggregate, $317,959.56 in fees ($106,491.75, plus the $211,467.81 previously paid on account of the first interim fee application) and $38,532.19 in expenses; and, Trustee's accountants received $3,985.70 in fees. These amounts generally are consistent with the amounts set forth in the Notice. The Panel can take judicial notice of the filing and contents of the Trustee's final account and distribution report. In re E.R. Fegert, Inc., 887 F.2d at 957-58; In re Atwood, 293 B.R. at 233 n.9.

9

|  | Total Final Request | Total Allowed | Paid To Date | Remaining Balance |
|---|---|---|---|---|
| **Trustee's counsel:** | | | | |
| fees: | $683,592.00 | $683,592.00 | $211,467.81 | $472,124.19 |
| exps.: | $68,623.47 | $68,623.47 | $38,532.19 | $30,091.00 |
| **Trustee's accountant:** | | | | |
| fees: | $8,569.00 | $8,569.00 | $0.00 | $8,569.00 |
| exps.: | $0.00 | $0.00 | $0.00 | $0.00 |
| **Trustee:** | | | | |
| fees: | $54,394.92 | $54,394.92 | $0.00 | $54,394.92 |
| exps.: | $0.00 | $0.00 | $0.00 | $0.00 |

Law timely appealed the Fee Order by filing a notice of appeal on November 23, 2010.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157, and the Panel has jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the bankruptcy court err when it determined that the Trustee and his professionals met the service requirements applicable to the Final Report and their fee applications by serving on Law the Notice and the Summary?

2. Did the bankruptcy court err when it determined that the Trustee's fee request met the requirements of §§ 326(a) and 330(a)?

3. Did the bankruptcy court err by approving the Final

10

Report and granting the fee applications even though Law had appeals pending in the Court of Appeals from the bankruptcy court's prior orders?

4. Should the bankruptcy court have denied all of the fee applications because of false statements allegedly made by Trustee's counsel at the hearing on the fee applications?

**STANDARDS OF REVIEW**

Issues regarding the sufficiency of service are reviewed de novo. See Rubin v. Pringle (In re Focus Media, Inc.), 387 F.3d 1077, 1081 (9th Cir. 2004).

The court's determination of how much money the Trustee disbursed for purposes of calculating the § 326(a) cap was a finding of fact subject to the clearly erroneous standard of review. Under the clearly erroneous standard, the Panel may not reverse the bankruptcy court's findings of fact unless they were: "'[1] illogical, [2] implausible, or [3] without support in inferences that may be drawn from the facts in the record.'" Forest Grove School Dist. v. T.A., 638 F.3d 1234, 1239 (9th Cir. 2011) (quoting United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc)).

The Panel reviews a bankruptcy court's decision to grant fees under § 330(a) for abuse of discretion. See Ferrette & Slater v. U.S. Trustee (In re Garcia), 335 B.R. 717, 722 (9th Cir. BAP 2005). Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." Hinkson, 585 F.3d at 1262. And if the bankruptcy court identified the correct legal rule, we then determine under

11

the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

**DISCUSSION**

**A. Standing**

As a threshold matter, the Panel will consider Law's standing to appeal. See Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc (In re Palmdale Hills Prop., LLC), 654 F.3d 868, 873-74 (9th Cir. 2011); Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 906 (9th Cir. BAP 2011). In order to have standing to appeal, Law must be a "person aggrieved" by the order appealed. In re Palmdale Hills Prop., 654 F.3d at 874. The "'person aggrieved test' provides that '[o]nly those persons who are directly and adversely affected pecuniarily by an order of the bankruptcy court . . . have standing to appeal that order.'" Id. (quoting Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir.1983)). An order affecting the size of the estate does not directly and adversely affect pecuniarily a hopelessly insolvent debtor because "[s]uch an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." In re Fondiller, 707 F.2d at 442.

In this instance, if the Fee Order were reversed and the roughly $400,000 in fees and expenses paid to the Trustee and his counsel were disallowed, as Law seeks on appeal, Law's residual interest in the estate apparently would have value. The record

12

reflects that the only timely-filed unsecured proof of claim, Li's judgement claim, has been satisfied in full, and the only other unsecured proofs of claims filed against the estate are tardily-filed claims in the aggregate amount of roughly $10,000.00. Consequently, Law does have a pecuniary interest in the outcome of this appeal and thus has standing to appeal.

**B.   Compliance With Service Requirements**

Law has admitted that he received a copy of the Notice, which contained the Summary of the Final Report.[7] But Law claims that the Trustee and his professionals also should have served upon him the full Final Report and all final fee applications. We disagree. None of the Local Rules that Law has cited require a trustee to serve a full final report on the debtor, nor are we aware of any such rule. In fact, the Federal Rules of Bankruptcy Procedure, particularly Rule 2002(f)(8), indicate to the contrary. That Rule merely requires service of "a summary of the trustee's final report in a chapter 7 case . . . ." (Emphasis added.)

Similarly, Law has not cited to any rule that would have required the Trustee or his professionals to serve their final fee applications on Law. Rule 2002(a)(6) merely provides for service of notice of the hearing on any such fee applications. And Local Rule 2016-1(c)(4)(C) provides:

> All final fee applications by professional persons must be set for hearing with the chapter 7 trustee's final

---

[7]Law did not assert either in the bankruptcy court or on appeal that the Notice or the Summary were misleading or incomplete. Consequently, Law has waived any such issues. See In re Choo, 273 B.R. at 613; In re Branam, 226 B.R. at 55.

13

application for allowance and payment of fees and expenses. Notice of a final fee application must be given by the chapter 7 trustee as part of the notice of the hearing on the trustee's request for compensation. A separate notice by the applicant is not required.

Simply put, the Panel is not aware of any rule requiring the trustee or his professionals to serve their full final fee applications on the debtor in a chapter 7 case. Therefore, Law's argument regarding service lacks merit.[8]

**C. Compliance With §§ 326(a) and 330(a)**

Law asserts that the compensation awarded to the Trustee did not comply with the statutes governing trustee compensation, namely § 326(a) and § 330(a). The Panel will address each of these statutes in turn.

**1. § 326(a)**

Section 326(a) sets a maximum amount, or cap, on fees that may be awarded on account of a chapter 7 trustee's services in a chapter 7 case. As provided in § 326(a):

In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in

---

[8]Law also claims that the Trustee and his professionals were required to give 120 days advance notice of the hearing on their fee applications. This argument appears to be based on Law's misreading of Local Rule 2016-1(a)(2)(A), which provides in relevant part: "Unless otherwise ordered by the court, hearings on interim fee applications will not be scheduled less than 120 days apart." On its face, this statement only applies to interim fee applications and only restricts how far apart interim fee applications may be set.

14

interest, excluding the debtor, but including holders of secured claims.

Law in essence contends that, for purposes of calculating the cap on the Trustee's compensation under § 326(a), the court should have used the amount of net sale proceeds received by the estate after deducting the costs of sale. Law admits that the Property sold for $680,000, but he claims that only the net sale proceeds (which he figures to be $489,511.81) should have been counted in calculating the § 326(a) cap on trustee compensation. We disagree. The appropriate numbers for calculating the cap are not net sale proceeds but rather are monies the Trustee disbursed to parties in interest. See U.S. Trustee v. Tamm (In re Hokulani Square, Inc.), 460 B.R. 763, 2011 WL 5924442 at **6-10 (9th Cir. BAP 2011) (applying plain meaning and contextual definition of "moneys disbursed" in holding that secured creditor's credit bid in exchange for its purchase of estate property should not be counted in calculating the cap on trustee compensation). Such monies disbursed included monies paid at the Trustee's behest from the sale escrow pursuant to the bankruptcy court's order authorizing the sale of the Property. See In re Blair, 313 B.R. 865, 870 (Bankr. E.D. Cal. 2004), aff'd, 329 B.R. 358 (mem. dec. 9th Cir. BAP Jun. 20, 2005); see also 3 Collier on Bankruptcy ¶ 326.02[1][f][i] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed. 2011) (stating that weight of authority holds cap calculation should include monies paid by escrow agent, including funds paid to secured creditors, and explaining why as a matter of bankruptcy policy that is appropriate). Here, the Final Report reflects that, with the exception of $20,000 in deposit funds paid directly to the Trustee, the full purchase price for

15

the Property of $681,294.63 was paid into escrow, and the escrow agent in turn disbursed all of the funds on the Trustee's behalf in accordance with the bankruptcy court's February 22, 2006 order authorizing sale of the Property. Some of those escrow funds, specifically $469,591.08,[9] were disbursed by the escrow agent to the Trustee, who in turn disbursed them in accordance with the terms of the Final Report.

Based on these facts, the Panel concludes that the appropriate amount the court should have considered for purposes of calculating the §326(a) cap was $681,294.63.

The Trustee's Final Report claims receipts and disbursements of $1,018,169.15. But the Trustee has not explained how the $681,294.63 in gross proceeds from the sale of the sole asset of the estate generated $1,018,169.15 in disbursed funds.[10]

---

[9]According to Exhibit B attached to the Final Report, the Trustee received from escrow net sale proceeds of $188,777.91, plus $280,813.17 on account of the avoidance and preservation for the estate of Lili Lin's lien, for total net receipts of $469,591.08.

[10]Looking at the numbers in Exhibit B to the Final Report, we suspect that the difference between these two numbers consists of the following:

| | |
|---|---|
| Interest accrued: | $19,591.35 |
| Lili Lin lien avoidance/recovery: | $280,813.17 |
| Amount deposited by prospective purchasers in conjunction with proposed sale of Property (ultimately refunded when prospective purchasers were not the successful bidders at bankruptcy court auction): | $16,470.00 |

(continued...)

16

In any event, assuming without deciding that the court erred when it accepted the Trustee's disbursal number of $1,018,169.15 rather than the lower number of $681,294.63, any such error was harmless. The amount that the Trustee ultimately received in compensation ($25,300.81) was well within the § 326(a) cap under either number. The Panel acknowledges that the Fee Order purported to award the Trustee $54,394.92 in fees, but the award amount set forth in the Fee Order is largely irrelevant under the circumstances of this case. What mattered here was the amount actually paid to the Trustee; any other amount did not actually inure to anyone's benefit or detriment, and the Panel must ignore harmless error. <u>See</u> <u>Litton Loan Serv'q, LP v. Garvida (In re Garvida)</u>, 347 B.R. 697, 704 (9th Cir. BAP 2006) (citing 28 U.S.C. § 2111, Rule 9005, Civil Rule 61, and <u>Donald v. Curry (In re</u>

---

[10](...continued)

| | |
|---|---|
| Amount deposited by second-highest bidders at bankruptcy court auction accepted by trustee as backup offer (ultimately refunded when sale to highest bidder closed): | $20,000.00 |
| **Sum of the above amounts:** | **$336,874.52** |
| **Difference between Trustee's claimed disbursements and gross sale proceeds:** | **$336,874.52** |

Other than the interest accrued, it is questionable whether any of these other amounts should have been counted in calculating the §326(a) cap. The counting of the $280,813.17 lien recovery is particularly questionable as it does not appear to be "moneys disbursed or turned over" within the meaning of § 326(a). <u>See</u> <u>In re Hokulani Square</u>, 460 B.R. at 763, 2011 WL 5924442 at *12. Moreover, the $280,000 lien already was "counted" as part of the purchase price received and disbursed from the sale of the Property. Consequently, counting the lien recovery again separately appears to constitute double counting of the same funds already accounted as disbursed.

17

<u>Donald)</u>, 328 B.R. 192, 203-04 (9th Cir. BAP 2005)).

Law also complains that the Trustee's request for fees in his Final Report only sought $25,298.45 in fees, whereas the court's Fee Order awarded the Trustee $54,394.92 in fees. Once, again, assuming without deciding that the court erred in ordering an award of more than $25,298.45, any such error was harmless. The Trustee actually received in fees essentially the same amount that he requested in his Final Report. The Panel simply cannot reverse on the basis that the court's fee award stated a higher amount when the higher amount was not paid and never will be paid. <u>See</u> <u>id.</u>

**2. § 330(a) and Rule 2016**

Liberally construing Law's pro se appeal brief as we must, <u>see</u> <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990), Law challenges on appeal the reasonableness of the Trustee's fee and asserts that the Trustee should have filed a separate fee application satisfying the requirements of § 330(a) and Rule 2016.[11] We agree with this assertion, as explained below.

Section 330(a) requires the court to consider "the nature, the extent and the value of such services" for which the trustee seeks compensation. § 330(a)(3). These considerations in turn require the court to take into account "all relevant factors" including: (1) the time the trustee expended providing the services; (2) the necessity of the services; (3) the rate the

---

[11]At oral argument, Trustee's counsel conceded that Law had raised the issue of the reasonableness of the Trustee's fee request.

18

trustee charged; and (4) the complexity, importance and nature of the issues addressed or tasks undertaken.  See § 330(a)(3)(A)-(F); see also  Gill v. von Wittenberg (In re Fin. Corp. of Am.), 114 B.R. 221, 223 (9th Cir. BAP 1990), aff'd, 945 F.2d 689 (9th Cir. 1991).[12]

The trustee bears the burden of establishing that the fees requested are reasonable.  Roderick v. Levy (In re Roderick Timber Co.), 185 B.R. 601, 606 (9th Cir. BAP 1995); Locke v. Walsh (In re Travel Headquarters, Inc.), 140 B.R. 260, 261-62 (9th Cir. BAP 1992).  As the Panel stated in Roderick Timber, "In obedience to the statute, in every case, a bankruptcy court should award only those fees that are proven to be actual, necessary and reasonable.  Any lesser requirement would make the trustee's burden of proof a mere shell."  In re Roderick Timber, 185 B.R. at 605-06.  As part of his or her efforts to meet this burden, the trustee must submit to the court a fee application complying with the requirements of Rule 2016.  Id.; In re Travel Headquarters, Inc., 140 B.R. at 261-62.  In relevant part, Rule 2016(a) provides "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested."   (Emphasis

---

[12]BAPCPA added a new provision to § 330(a), codified as § 330(a)(7), which states: "In determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326." This new provision is inapplicable to this case because this case predates BAPCPA.

19

added.)[13]

Here, neither of the parties provided us with anything suggesting that the Trustee prepared and filed a fee application complying with the requirements of 2016, nor have we found anything of that nature in our own search of the bankruptcy court record. We note that the Final Report, which included the Trustee's fee request, also included a narrative summary of the entire case history. But this narrative summary does not identify the services provided by the Trustee (as opposed to those provided by his attorneys or his accountants), nor does the narrative summary give us any indication whatsoever of the amount of time the Trustee expended undertaking whatever services he provided.

We do not need to decide in this appeal whether Rule 2016 always requires a chapter 7 trustee to submit a separate fee application containing an itemized statement of the services rendered and the time expended in rendering those services. For our purposes, it suffices for us to say that none of the Trustee's submissions in this case were sufficient to satisfy the minimum requirements of Rule 2016.

---

[13]Even before the 1978 enactment of the Bankruptcy Code and the later enactment of Rule 2016, the time the Trustee expended providing services was a critical factor in assessing the reasonableness of the fees requested. As the Panel stated in Roderick Timber, "[i]t has long been the rule in this circuit that trustees have a duty to meticulously maintain accurate records of time expended on behalf of the estate." Roderick Timber, 185 B.R. at 605 (citing Matter of Beverly Crest Convalescent Hospital, Inc., 548 F.2d 817, 820 (9th Cir. 1976), and York Intern. Building, Inc. v. Chaney, 527 F.2d 1061, 1069 (9th Cir. 1975)).

20

The court made no finding that the Trustee's requested fees were reasonable, nor is the record sufficient (in light of the above-referenced deficiencies) for us to say that it affords us with a complete understanding of the basis for the court's ruling on the Trustee's fee request.

Under these circumstances, the Panel must vacate the portion of the Court's Fee Order granting the Trustee's fee request. When the bankruptcy court does not make sufficient findings to support its ruling and when the record is not sufficient to provide us with a complete understanding of the basis for the court's ruling, the Panel must vacate and remand. See Alpha Distrib. Co. of Cal., Inc. v. Jack Daniel Distillery, 454 F.2d 442, 452-53 (9th Cir. 1972); Canadian Comm'l Bank v. Hotel Hollywood (In re Hotel Hollywood), 95 B.R. 130, 132-34 (9th Cir. BAP 1988) (same).

**D. Waiting for Court of Appeals Decisions**

Law argues that the bankruptcy court erred in approving the Final Report and granting the fee applications before all of his pending appeals before the Court of Appeals had been resolved. Law's contentions in support of this argument are exceedingly difficult to follow. For instance, his contentions seem to implicitly assume that the Panel never upheld the bankruptcy court's second surcharge order and never upheld its determination that the Lin Deed of Trust was a fiction created by Law in an attempt to defraud his creditors. But Law's assumptions are simply wrong; the Panel did uphold these bankruptcy court rulings. See In re Law, 2009 WL 7751415 at **7-8. Furthermore, the Court of Appeals has ruled against Law on both of his pending

21

appeals, thereby rendering moot Law's argument that the bankruptcy court should have waited to see if Law would prevail on these pending appeals.

Put another way, there is no meaningful relief the Panel can afford to Law given that the position he has taken on appeal hinges on his prevailing in two prior appeals that the Court of Appeals has now decided against him. See Lowenschuss v. Selnick (In re Lowenschuss), 170 F.3d 923, 933 (9th Cir.1999) (stating that mootness of an appeal turns on whether appellate court can fashion some form of effective relief); United States v. Gould (In re Gould), 401 B.R. 415, 422-23 (9th Cir. BAP 2009) (same). Consequently, this argument of Law's is moot.[14]

**E.    False Statements Supposedly Leading to Entry of Fee Order**

Finally, Law claims that, at the November 3, 2010 hearing on the Final Report and the fee applications, Trustee's counsel made false statements regarding the amount of fees allowed on account of their first interim fee application. According to Law, based on these false statements, all of the fees requested by the Trustee and his professionals should have been disallowed. First of all, as a preliminary matter, based on the record provided to us, it is far from clear that there was anything false or misleading about the statements of Trustee's counsel made at the November 3 hearing. Law asserts Trustee's counsel represented

---

[14]Even if this argument were not moot, we agree with the bankruptcy court's stated reason for rejecting this argument. The bankruptcy court's prior final orders, unless stayed, were immediately effective, and Law could not treat the court's prior orders as ineffective while he was appealing them absent a stay pending appeal. See Gemmill v. Robison (In re Combined Metals Reduction Co.), 557 F.2d 179, 190 (9th Cir. 1977).

22

that $683,592.00 in fees were allowed on account of their first interim fee application. Actually, the hearing transcript does not reflect that Trustee's counsel said what Law claims that he said. Rather, counsel said that the court "approved the entire [first interim] application for well in excess of what is being requested but only allowed $200,000.00 to be paid." Hr'g Tr. (Nov. 3, 2010) at 4:9-11. Rather, it was the court that said, to the best of its recollection, the first interim fee application sought fees of "well over half a million dollars" and that it allowed "all the fees because I found them to be reasonable and appropriate" but only authorized the firm to be paid at that time $250,000.00 in fees and expenses because of the amount of funds available to the estate. Id. at 5:3-9.

Thus, Law's argument really challenges the court's recollection rather than the statements of counsel. More importantly, even if we were to credit Law's argument and conclude that the court's recollection was somehow erroneous, Law has once again pointed us to what is, at most, harmless error. Without relying on its prior ruling on the first interim fee application, the court found reasonable the total amount of compensation to be paid to Trustee's counsel on account of their services rendered during the entire case. Indeed, the court's finding on this issue went much further. The court stated: "whatever money they receive in this case would seem to be grossly inadequate for all of the work that [counsel] have gone through." Id. at 14:11-13 (emphasis added).

Law has not argued on appeal that the court erred when it determined that trustee's counsel's fees were reasonable, so he

23

has waived that argument. See In re Choo, 273 B.R. at 613; In re Branam, 226 B.R. at 55. Furthermore, on the record presented, we could not conclude that the court's reasonableness determination was illogical, implausible or without support in inferences that could be drawn from the facts in the record.

Accordingly, we reject as meritless Law's argument regarding the so-called false statements made by Trustee's counsel.

**CONCLUSION**

For the reasons set forth above, we VACATE the portion of the Fee Order granting the Trustee's fee request, and we REMAND for further proceedings on that issue. The remainder of the Fee Order is AFFIRMED.

24